In re Petition for DISCIPLINARY AC-
TION AGAINST Gregory J. REBEAU,
a Minnesota Attorney, Registration
No. 89977.

No. A09–382.

Supreme Court of Minnesota.

Aug. 5, 2010.

Martin A. Cole, Director, Julie E. Bennett, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for petitioner.

Gregory J. Rebeau, St. Paul, MN, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility served and filed a petition [1] for discipline in January 2009 alleging that respondent Gregory J. Rebeau failed to timely file and pay employer withholding taxes, committed trust account violations, engaged in other acts of dishonesty and conduct prejudicial to the administration of justice, misrepresented his licensure as an attorney in Florida, and failed to cooperate with the Director's office. Following a hearing, a referee appointed pursuant to Rule 14, Rules on Lawyers Professional Responsibility (RLPR), concluded that Rebeau had committed the violations as alleged, except for the Florida licensure charge, and recommended that Rebeau be suspended from the practice of law for 90 days and thereafter be automatically reinstated. Because we conclude that Rebeau's misconduct is more serious than recognized by the referee, we suspend Rebeau from the practice of law for a minimum of 12 months and condition his reinstatement as expressed more fully in this opinion.

### I.

Rebeau was admitted to practice law in Minnesota on September 29, 1978. He is a sole practitioner engaged in the general practice of law. Rebeau has no prior disciplinary history.

In January 2009, the Director served and filed a petition for discipline alleging that Rebeau engaged in six separate types of misconduct. Rebeau filed an answer admitting some of the alleged misconduct but specifically challenging the allegations that he failed to maintain the required trust account books and records, failed to bill a client according to the retainer agreement, failed to place unearned payments made by a client in the client trust account, engaged in acts of dishonesty, and failed to cooperate with the director. The matter proceeded to hearing before a referee, and the referee concluded Rebeau committed five of the six alleged violations.[2] Our discussion of Rebeau's violations is drawn from the referee's findings.

### A. Employer Withholding Taxes

Rebeau largely admitted and the referee found that Rebeau either failed to file or filed late his employer withholding tax returns for thirteen quarters between 1999 and the first quarter of 2008.[3] Additionally, the referee found that Rebeau failed to file his employer withholding tax returns for the second quarter of 2008 through the second quarter of 2009 despite the imple-

---

1. The Director served and filed a petition in January 2009 and a supplementary petition in March 2009. Rebeau filed answers to each of these petitions. For ease of reference, "petition" refers to both the original and supplementary petition and "answer" refers to both the original and supplementary answer.

2. One of the six violations alleged by the Director was that Rebeau misrepresented that he was admitted to practice in Florida in violation of Rules 7.1 and 7.5(a), Minnesota Rules of Professional Conduct (MRPC). Rebeau was admitted to practice law in the State of Florida but was suspended in October 2000 for failing to pay the annual registration fee. After October 2000, Rebeau did not practice law in the State of Florida. Until August 2007, Rebeau stated on his law office letterhead that he was "Also Admitted in Florida." The referee concluded that Rebeau's use of the term "[a]dmitted in Florida" was not false and misleading and did not violate any rules of professional conduct. The Director did not challenge the referee's conclusion, and therefore we do not address that matter further.

3. The referee found that Rebeau owes at least $10,080.24 on his tax returns filed late and an unknown amount owing on the unfiled tax returns.

mentation of new office procedures.[4] Finally, the referee found that Rebeau had not yet filed the missing returns or paid the IRS. The referee concluded that Rebeau's failure to file and pay employer withholding taxes violated Rule 8.4(d),[5] Minnesota Rules of Professional Conduct (MRPC).

### B. Trust Account

Rebeau admitted that to protect his funds from attachment by the IRS beginning in 2006 he routinely deposited earned fees into his trust account and disbursed those earned fees directly to himself, his business, and personal creditors. Also, Rebeau admitted that he commingled personal and client funds, misappropriated client funds, and failed to promptly disburse earned fees from the trust account. Rebeau denied that he failed to maintain the required books and records. The referee found that Rebeau committed trust account violations consisting of fraudulent use of a trust account, commingling, misappropriation, failure to promptly disburse earned fees, and failure to maintain required trust account books and records, in violation of Rules 1.15(a), (b), and (c)(3), and 8.4(c), MRPC, and Appendix 1 thereto (formerly Lawyers Professional Responsibility Board Opinion No. 9).[6] The referee

also found that from January 2004 through November 2006 Rebeau failed to maintain the trust account books and records required by Rule 1.15, MRPC, and that the Director's office was required to obtain many trust account records directly from the bank because Rebeau was unable to produce the requested documents.

### C. Fee Agreement

In April 2005, Rebeau was retained by M.M. and J.M. They signed a retainer agreement, and M.M. and J.M. paid a retainer fee. One paragraph of the agreement stated that the retainer would be deposited in trust, but another paragraph stated that the retainer was nonrefundable and would not be held in trust. Rebeau admits that these two paragraphs were inconsistent and failed to clearly communicate how he would handle the retainer. Rebeau entered into retainer agreements with six other clients that included the same inconsistent paragraphs.

The retainer agreement also stated that Rebeau would provide monthly billing statements. The referee found that Rebeau failed to provide those monthly statements, even when requested by M.M. and J.M. M.M. and J.M. terminated Rebeau's representation and requested that the balance of the unearned retainer fee be re-

4. The amount owed for these five unfiled quarters is unknown.

5. Rule 8.4(d), MRPC, provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

6. Rule 1.15, MRPC, governs a lawyer's duties regarding the safekeeping of clients' property including client funds. Rule 1.15(a) provides, among other things, that all client funds shall be deposited in an identifiable trust account, and that subject to certain exceptions not applicable here, "no funds belonging to the lawyer or law firm shall be deposited" in the trust account. Rule 1.15(b) provides, among

other things, that a "lawyer must withdraw earned fees and any other funds belonging to the lawyer or the law firm from the trust account within a reasonable time." Rule 1.15(c)(3) provides that a lawyer must maintain complete records of all funds of a client in the possession of a lawyer and "render appropriate accounts to the client" regarding them. Rule 8.4(c), MRPC, provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Appendix 1 to the Rules of Professional Conduct requires every attorney engaged in the private practice of law to maintain various books and records, including trust account records.

funded. Rebeau refunded $610 to M.M. and J.M., claiming that was the amount to which M.M. and J.M. were entitled. In June 2007, the Director prepared an accounting, based on Rebeau's monthly statements, showing that the total amount to which M.M. and J.M. were entitled was $4,471.50. Rebeau then provided the Director with two additional invoices, which reduced M.M. and J.M.'s credit balance to $3,911.50.

The referee concluded that Rebeau failed to clearly communicate to M.M. and J.M. and the other clients how he would handle their initial fee retainers, failed to bill in accordance with the retainer agreement, and failed to hold M.M. and J.M.'s unearned fees in trust, violating Rules 1.15(a) and (c)(5), 1.4(b), and 1.5(b), MRPC.[7]

### D. Vehicle Forfeiture Matter

Rebeau represented C.S., who, in December 2006, was involved in an automobile accident resulting in damage to his vehicle and was charged with second-degree driving while impaired. Pursuant to Minn.Stat. § 169A.63 (2006), the Ramsey County Sheriff's Office seized the vehicle and served a notice of forfeiture of the vehicle on C.S. and his insurer. C.S. retained Rebeau to represent him in both matters. In March 2007, C.S. pleaded guilty to second-degree DWI. As a result, both the title to the vehicle and the insurance proceeds for the damages to the vehi-

cle vested in the Sheriff's Office. *See Schug v. $9,916.50 in U.S. Currency*, 669 N.W.2d 379, 384 (Minn.App.2003). The City of Shoreview then commenced a vehicle forfeiture action and moved for summary judgment. When the city initially moved for summary judgment, C.S. and Rebeau did not appear at the hearing, and the court granted the motion in favor of the city. Subsequently, the order was vacated pursuant to stipulation, and the motion for summary judgment was rescheduled.

Before the hearing, Rebeau wrote to the insurer, enclosing a copy of the court's order vacating summary judgment and stating that the vehicle was "solely owned by [C.S.]" and payment of the insurance proceeds should be issued to C.S. or else Rebeau would pursue all available remedies including a "bad faith claim and the possibility of personal liability." Rebeau, however, did not send a copy of the letter to the city. The insurer issued a check for the insurance proceeds to C.S. When the city discovered that Rebeau had obtained the insurance proceeds, it brought a motion for contempt. The district court granted the motion, concluding that Rebeau had acted in bad faith and abused the process of the court. The referee concluded that Rebeau's conduct in making a false statement to the insurer in order to obtain insurance proceeds violated Rules 4.1 and 8.4(c) and (d), MRPC.[8]

---

**7.** Rule 1.15(c)(5), MRPC, provides that a lawyer must deposit all fees in advance of the legal services being performed into a trust account and withdraw the fees as earned "unless the lawyer and the client have entered into a written agreement pursuant to Rule 1.5(b)." Rule 1.4(b), MRPC, requires that a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. Rule 1.5(b), MRPC, provides that

the scope of representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after the representation commences.

**8.** Rule 4.1 requires that a lawyer shall not knowingly make a false statement of fact or of law in the course of representing a client.

## E. Failure to Cooperate with the Director

In October 2008, the City of Shoreview submitted a complaint to the Director regarding Rebeau's conduct in the vehicle forfeiture matter. The Director forwarded to Rebeau a notice of investigation, and Rebeau responded to the city's complaint. Subsequently, the Director sent six letters to Rebeau, including a second notice of investigation and a request for an appearance, to which Rebeau did not respond. Rebeau asserted that he did not receive the Director's letters. The referee found that Rebeau's assertion that he did not receive the letters "was not credible." The referee concluded that Rebeau's conduct in failing to cooperate with the Director's investigation of the vehicle forfeiture matter violated Rule 25, RLPR.[9]

The referee concluded that Rebeau had engaged in the alleged misconduct and further concluded that Rebeau's misconduct was aggravated by its cumulative nature and the length of time over which it was committed, but was mitigated by Rebeau's 31 years of practice without discipline. The referee recommended that Rebeau be suspended from the practice of law for 90 days followed by automatic reinstatement. Both parties appealed.

## II.

Initially, Rebeau argued that the referee erred in his finding involving the handling of retainer fees and monthly billings. Also, Rebeau argued that the referee erred in finding that he failed to cooperate in the Director's investigation of the vehicle forfeiture matter. Prior to oral argument, Rebeau withdrew his objections to the referee's findings. Thus, the findings of fact and conclusions of law are deemed conclusive. *See In re Karlsen,* 778 N.W.2d 307, 311 (Minn.2010); *In re Ryerson,* 760 N.W.2d 893, 900 (Minn.2009).

■ The question remaining is the appropriate discipline to impose for Rebeau's misconduct. The Director contends that the referee's recommended 90–day suspension is insufficient, and that Rebeau's misconduct warrants a 24–month suspension. The Director argues that Rebeau "has committed multiple acts of serious professional misconduct and has little or no insight into his misconduct and its impact on the public and the judicial system" and has demonstrated "no remorse for his conduct." Rebeau argues that suspension is too severe and that probation is more appropriate.

■ The purpose of discipline for professional misconduct is not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys. *In re Plummer,* 725 N.W.2d 96, 98 (Minn.2006); *In re De Rycke,* 707 N.W.2d 370, 373 (Minn.2006). Although we place great weight on the referee's recommended discipline, we retain ultimate responsibility for determining the appropriate sanction. *In re Grigsby,* 764 N.W.2d 54, 62 (Minn. 2009) (citing *In re Nelson,* 733 N.W.2d 458, 463 (Minn.2007)). In imposing discipline, we consider four factors: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violation; (3) the harm to the public; and (4) the harm to the legal profession." *In re Nelson,* 733 N.W.2d 458, 463 (Minn.2007). We also consider any mitigating or aggravating circum-

---

**9.** Rule 25 of the Rules on Lawyers Professional Responsibility (RLPR) provides, among other things, that it shall be the duty of any lawyer who is the subject of an investigation or proceeding under these rules to cooperate with the Director by complying with reasonable requests for information.

stances. *See In re Houge,* 764 N.W.2d 328, 338 (Minn.2009). Although prior decisions guide and aid us in enforcing consistent discipline, *In re Orren,* 590 N.W.2d 127, 129 (Minn.1999), we impose discipline based on the unique facts and circumstances of each case, *In re Redburn,* 746 N.W.2d 330, 334 (Minn.2008).

### A. Nature and Harm of Misconduct

Rebeau either failed to file or filed late employer withholding tax returns for thirteen quarters between 1999 and the first quarter of 2008. Rebeau also failed to file employer withholding tax returns for five quarters in 2008 and 2009, and Rebeau owes money to the IRS for employer withholding taxes. We have warned that the failure to file tax returns is serious professional misconduct warranting suspension or disbarment. *In re Gurstel,* 540 N.W.2d 838, 842 (Minn.1995) (citing *In re Bunker,* 294 Minn. 47, 199 N.W.2d 628 (1972)). We have also warned that the failure to timely file and pay employer withholding taxes is serious misconduct warranting suspension or disbarment. *In re Moulton,* 721 N.W.2d 900, 905 (Minn.2006). The failure to file and pay employer withholding taxes is particularly serious because it "is tantamount to taking employees' money for the attorney's own use, breaches the trust established between employer and employee, and calls on governmental resources to enforce compliance with the law by those who are sworn to uphold it." *Gurstel,* 540 N.W.2d at 842 (imposing a 60–day suspension followed by formal reinstatement proceedings and two years probation for an attorney's failure to timely file and pay his state and federal employer withholding tax returns for one year).

Additionally, Rebeau misused his trust account from 2006 to 2009. Specifically, Rebeau used the trust account to shelter funds from the IRS, commingled personal and client funds, misappropriated client funds, and failed to maintain the required books and records. A particular problem is that by commingling personal and client funds in his client trust account, Rebeau left client funds exposed to garnishment or seizure by the IRS. *See In re Overboe,* 745 N.W.2d 852, 867–68 (Minn.2008). The misuse of a trust account is serious and will almost invariably result in a lengthy suspension or disbarment, *Overboe,* 745 N.W.2d at 868 (citing *In re Kinnunen,* 502 N.W.2d 773, 775 (Minn.1993)), and the misappropriation of client funds is particularly serious misconduct, usually warranting "disbarment absent clear and convincing evidence of substantial mitigating factors," *In re Rhodes,* 740 N.W.2d 574, 579 (Minn. 2007) (citation omitted) (internal quotation marks omitted).

█ Further, Rebeau did not respond to the Director's six follow-up letters regarding the vehicle forfeiture matter and the Florida licensure matter. The failure to reasonably respond to a Director's notice of investigation constitutes noncooperation, *In re Westby,* 639 N.W.2d 358, 369 (Minn.2002), and is a separate act of misconduct distinct from the underlying violations that warrants public discipline including suspension, *see In re Engel,* 538 N.W.2d 906, 907 (Minn.1995) (holding failure to cooperate warrants indefinite suspension). When noncooperation exists in connection with other misconduct, the noncooperation increases the severity of the disciplinary sanction as an aggravating factor. *Nelson,* 733 N.W.2d at 464.

Finally, Rebeau failed to clearly communicate to several clients how he would handle fee retainers and failed to bill one client in accordance with the retainer agreement. He also made a false statement to an insurance company in order to obtain insurance proceeds. We consider these types of misconduct when determin-

ing the cumulative effect of an attorney's violations to support suspension and even disbarment. *See, e.g., Grigsby,* 764 N.W.2d at 63 (considering as part of the cumulative misconduct warranting suspension the "failure to use written retainer agreements in cases in which the client's advance fee payments were to be nonrefundable [even though it does] not [itself] warrant suspension"); *In re Brehmer,* 642 N.W.2d 431, 433 (Minn.2002) (imposing disbarment for various acts of misconduct including failure to provide an accounting of services and bills); *In re Wentzell,* 656 N.W.2d 402, 408–09 (Minn.2003) (imposing a six-month suspension for misconduct including, in part, making false and misleading statements); *In re Jambor,* 694 N.W.2d 72, 72 (Minn.2005) (lengthening a suspension based on making a false statement to a tribunal).

Based on the nature of Rebeau's misconduct alone, we conclude that his requested discipline of probation is not sufficient to protect the public or the judicial system or to deter future misconduct. Therefore, the question remaining is what length of suspension is appropriate.

### B. *Cumulative Effect*

■ The Director asserts that the cumulative effect of the misconduct warrants a 24–month suspension. Rebeau argues that the referee's suggested discipline overstates his misconduct. "[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser,* 679 N.W.2d 153, 160 (Minn.2004). When an attorney's cumulative misconduct involves multiple violations, we have imposed sanctions more severe than if the attorney committed just one violation. *See, e.g., In re Grathwol,* 574 N.W.2d 70, 70 (Minn.1998) (12–month

suspension because attorney did not cooperate with the Director and failed to communicate with client or return unearned fees); *In re Bruender,* 530 N.W.2d 521, 521 (Minn.1995) (18–month suspension for combination of tax violations, trust account violations, and noncooperation with the Director); *In re Field,* 506 N.W.2d 631, 631 (Minn.1993) (one-year suspension for multiple trust account violations despite having no prior disciplinary history and cooperating with the director).

The Director cites two cases to support his position that a lengthier suspension is appropriate: *In re Varriano,* 755 N.W.2d 282 (Minn.2008), and *Overboe,* 745 N.W.2d 852. In *Varriano,* we suspended an attorney for one year based on several trust account violations including shielding money from the IRS, commingling personal and client funds, and failing to maintain trust account books and records. 755 N.W.2d at 286, 292. The attorney also failed to enter into a proper, written non-refundable retainer agreement and failed to obtain consent for a conflict in representing a client. *Id.* at 286–87. Rebeau's misconduct is similar to the trust-account violations and fee-agreement problems in *Varriano,* but distinguishable in that Varriano also failed to obtain client consent to a potential conflict of interest. *See id.* at 291. Unlike *Varriano,* Rebeau's misconduct also involves the repeated failure to file and pay employer withholding taxes, making a false statement to a third party, and failing to cooperate with the Director.

In *Overboe,* we suspended an attorney for one year for trust account violations including deceptively labeling a personal account as a trust account to shield his personal funds from judgment creditors and commingling client funds with personal funds. 745 N.W.2d at 856. The attorney also made false statements to the Director regarding his trust account and

failed to cooperate with the Director. *Id.* at 859. Several aggravating factors contributed to our decision in *Overboe*, including the attorney's lack of remorse, previous disciplinary history, and substantial experience as a lawyer. *Id.* at 867 (citing *In re Holker*, 730 N.W.2d 768, 775 (Minn. 2007)). Unlike *Overboe*, Rebeau does not have a prior disciplinary history. Rebeau's misconduct, however, involved not only trust account violations, but also the repeated failure to file and/or pay employer withholding taxes. In that respect, Rebeau's misconduct is more serious than either *Varriano* or *Overboe*.

### C. Mitigating and Aggravating Factors

Rebeau contends that his discipline should be mitigated because he has practiced for 31 years without prior discipline. The referee found that Rebeau's "multiple acts of professional misconduct and the length of time over which the failure to file or pay withholding taxes occurred" constituted aggravating factors. The referee also found that Rebeau's 31 years of practice without discipline warranted mitigation. The referee did not find that Rebeau was remorseful, so remorse was not a mitigating factor.

■■■■ We consider mitigating and aggravating circumstances when determining the appropriate discipline for an attorney's misconduct. *See Houge*, 764 N.W.2d at 338. The cumulative weight and the nature of the misconduct are aggravating factors. *Redburn*, 746 N.W.2d at 334, 336. The lack of remorse also constitutes an aggravating circumstance. *In re Rooney*, 709 N.W.2d 263, 271 n. 4 (Minn.2006).

■■■ Rebeau committed multiple types of serious misconduct over a period of 10 years. Rebeau has not shown remorse, has not corrected his lack of recording keeping, and has not paid his outstanding tax obligations to the IRS. We conclude that Rebeau's multiple acts of misconduct, lack of remorse, and unwillingness to correct his misconduct are aggravating factors.

■■■ The referee also concluded that Rebeau's lack of prior discipline coupled with his 31 years of practice constituted a mitigating circumstance. We disagree. An attorney's lack of disciplinary history is not a mitigating factor. *In re Aitken*, 787 N.W.2d 152, 162 (Minn.2010) (concluding that an attorney's disciplinary history is an aggravating factor but the absence of disciplinary history is not a mitigating factor). Rather, substantial experience as a lawyer may constitute an aggravating factor. *Overboe*, 745 N.W.2d at 867. In this case, Rebeau committed serious misconduct during 10 of his 31 years in practice. This misconduct was not a single misstep in an otherwise unbroken history of exemplary conduct; it was a series of violations committed during nearly one-third of his legal career. We therefore conclude that Rebeau's 31 years of practice without discipline is not a mitigating factor.

We conclude that Rebeau's misconduct, when considered in its totality, warrants suspension for a minimum of 12 months followed by probation for four years.

Accordingly, we order that:

1. Respondent Gregory J. Rebeau is indefinitely suspended from the practice of law, effective 14 days after the date of filing of this opinion, and that he is ineligible to petition for reinstatement for a minimum of 12 months from the effective date of the suspension.

2. Rebeau shall comply with the requirements of Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

3. Rebeau may petition for reinstatement by demonstrating that he has filed all employer tax withholding returns required by law, has either paid all employer withholding taxes, penalties, and interest due and owing on those returns or has made offers in compromise to the IRS and to the Minnesota Department of Revenue that those agencies are considering, and has otherwise complied with Rule 18(a)—(e), RLPR.

4. Upon reinstatement, Rebeau shall be placed on probation for a period of four years. During probation, Rebeau shall engage a tax professional acceptable to the Director to prepare and file all employer withholding tax returns required by either state or federal law or to certify to the Director that no such employer withholding returns are required. Rebeau shall provide quarterly to the Director proof that all employer withholding tax returns required by state or federal law have been timely filed and that all employer withholding taxes owed have been timely paid. If Rebeau fails to comply, the court may, at the Director's request and after giving Rebeau notice and an opportunity to be heard, revoke probation.

5. During each month of the probation, Rebeau shall prepare (or shall engage a professional to prepare) a reconciliation of his trust account and shall provide a copy of the reconciliation to the Director monthly or with such other frequency as the Director may request. Rebeau shall provide the Director with copies of the documentation supporting the reconciliation, such as copies of deposits made to the account and checks written on the account, at the Director's request.

6. Rebeau shall pay $900 in costs and disbursements pursuant to Rule 24, RLPR.

So ordered.

STRAS, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.