STATE OF MINNESOTA

IN SUPREME COURT

A13-1497

In re Petition for Disciplinary Action against
Brian James Engel, a Minnesota Attorney,
Registration No. 299790.

ORDER

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action alleging that respondent Brian James Engel committed professional misconduct warranting public discipline. The allegations of professional misconduct relate to respondent's knowing involvement as an escrow agent in the fraudulent schemes of his clients and improper use of his client trust account in furtherance of those schemes, in violation of Minn. R. Prof. Conduct 1.2(d), 1.15(c)(4), and 8.4(c). Respondent admitted the allegations of the petition for purposes of this disciplinary proceeding and admitted he violated the Minnesota Rules of Professional Conduct as set forth in the petition, waived his procedural rights under Rule 14, Rules on Lawyers Professional Responsibility (RLPR), and entered into a stipulation with the Director in which the parties jointly recommended that the appropriate discipline is an indefinite suspension with no right to petition for reinstatement for 2 years. Respondent acknowledged, however, that the court "may impose any of the sanctions set forth in Rule 15(a)(1)-(9), RLPR, including making any disposition it deems appropriate."

1

Following submission of the stipulation, we ordered the parties to show cause why respondent should not be disbarred in light of the professional misconduct to which he admitted. The Director and respondent filed responsive memoranda. We heard oral argument on the appropriate discipline to be imposed in this case.

Respondent's misconduct was a serious breach of the standards of professional conduct required of an attorney licensed in Minnesota. Respondent admits that he knowingly assisted his clients in three fraudulent schemes that resulted in the misappropriation of $4.7 million of investors' funds by acting as an escrow agent in these schemes. Respondent further admits he made a misrepresentation to one of the investors in these schemes. Respondent's status as an attorney and his use of an attorney escrow account gave the fraudulent schemes an air of legitimacy and perpetuated the damage caused by enabling his clients to continue the schemes. Moreover, respondent admits that he continued to act as escrow agent for his clients on the third fraudulent scheme even though the investors of one of the earlier fraudulent schemes had filed an ethics complaint against him.

Despite the serious nature of the misconduct involved, the unique circumstances of this case support the recommended disposition of an indefinite suspension with no right to petition for reinstatement for 2 years. Specifically, respondent's role was limited to that of an escrow agent and there is no evidence that respondent received any personal financial gain as a result of the fraud. In addition, the Director agreed to the recommended discipline, in part, because of concerns involving problems of proof. We give deference to the Director's evaluation of the risk of litigation and decision to enter

2

into a stipulation. *In re Brost*, 763 N.W.2d 637, 638 (Minn. 2009) (order); *see also In re Clark*, 848 N.W.2d 236, 236 (Minn. 2014) (order) (highlighting that "[t]he Director has explained that the recommended discipline was agreed to because of concerns involving problems of proof" when approving discipline recommended in a stipulation for discipline); *In re Kalk*, 829 N.W.2d 366, 367 (Minn. 2013) (order) (same).

The purpose of discipline for professional misconduct is not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys. *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010). In light of the unique circumstances of this case, we conclude that a 2-year suspension coupled with the requirement to petition for reinstatement will adequately protect the public and the judicial system and deter future professional misconduct by respondent and others. This order, however, is predicated upon the information presented to us regarding respondent's involvement in the fraudulent misconduct of his clients. We reserve the right to reopen this matter in the event that other material evidence is made available to the court.

Based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that:

1.    Respondent Brian James Engel is indefinitely suspended from the practice of law, effective from the date of the filing of this order, with no right to petition for reinstatement for a minimum of 2 years from the date of the filing of this order.

2.    Respondent may petition for reinstatement pursuant to Rule 18(a)-(d), RLPR. Reinstatement is conditioned on successful completion of the professional

3

responsibility portion of the state bar examination and satisfaction of the continuing legal educations requirements pursuant to Rule 18(e), RLPR.

3.      Respondent shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals), and shall pay $900 in costs pursuant to Rule 24, RLPR.

Dated:  February 24, 2015

BY THE COURT:

Alan C. Page
Associate Justice

4

DISSENT

LILLEHAUG, Justice (dissenting).

I respectfully dissent because, based on his admitted conduct, respondent should never again practice law in the State of Minnesota.

Respondent admits that he was both the attorney and the secretary of a corporation, JC Funding Solutions, Inc., headquartered in respondent's office, that engaged in at least three fraudulent investment schemes. The three frauds were accomplished by wire transfers into and out of respondent's attorney trust account.[1] Respondent admits that he used his trust account as the vehicle for transfers of $2.515 million on the first scheme, $1 million on the second scheme, and $1.2 million on the third scheme, for a total of $4.715 million.

Respondent admits that he participated in and assisted in the first two fraudulent schemes and thereby violated Rules 1.2(d) and 8.4(c) of the Minnesota Rules of Professional Conduct. What is particularly serious is that, even after he had notice that the first and second schemes were fraudulent, and even after victims of the second scheme filed an ethics complaint against him, respondent continued to participate in and assist JC Funding Solutions. According to the facts admitted, respondent used his trust account to facilitate the third scheme. He also made a misrepresentation to the investor

---

[1]  Respondent's Wells Fargo account was entitled "BJE, Inc. Attorney Escrow Account." According to public records of the Secretary of State, respondent was the chief executive officer and registered agent of BJE, Inc., a corporation created by respondent pursuant to Minnesota Statutes Chapter 302A. Minnesota does not allow the corporate practice of law except through professional firms organized under Chapter 319B. *See* Minn. Stat. § 481.02, subd. 2 (2014). Therefore, a professional firm may not use "Inc." in its name. *See* Minn. Stat. § 319B.05 (2014).

and disbursed funds contrary to escrow instructions. He acknowledges that he thereby violated Minn. R. Prof. Conduct 1.15(c)(4) and 8.4(c).

Taking into account his acts participating in and assisting the three fraudulent schemes, and considering his status as secretary and attorney for the corporation orchestrating the seven-figure frauds, cases considering acts of similar gravity suggest that respondent should be disbarred. *See In re Oberhauser*, 679 N.W.2d 153, 156, 160 (Minn. 2004) (disbarring attorney for using trust account in $11 million fraud scheme);[2] *In re Clasen*, 443 N.W.2d 190, 191 (Minn. 1989) (order) (disbarring attorney who engaged in a series of deceptive financial transactions with unsophisticated investors totaling approximately $97,000); *In re Larson*, 324 N.W.2d 656, 658-59 (Minn. 1982) (disbarring attorney for, among other things, making misrepresentations to investors, failing to file income tax returns, and failing to cooperate with the Director). At the very least, respondent qualifies for a suspension considerably longer than 2 years.[3]

To protect the public and to deter the use of attorney trust accounts as vehicles for fraud, respondent should be disbarred or, at a minimum, indefinitely suspended for at

---

[2] The investment scheme in *Oberhauser* was based on the idea that $100 million in treasury bonds could be "leased" and then traded for an enormous profit. 679 N.W.2d at 155. One of the three investment frauds which respondent assisted and participated in was based on the same idea.

[3] *See In re Crosby*, 577 N.W.2d 711, 711 (Minn. 1998) (order) (suspending for 5 years an attorney convicted of theft by swindle); *In re Perry*, 494 N.W.2d 290, 292, 295 (Minn. 1992) (suspending an attorney for 5 years for misappropriating over $430,000 from his mother's trust); *In re Daffer*, 344 N.W.2d 382, 383 (Minn. 1984) (suspending an attorney for 5 years for misappropriating over $172,000 mistakenly credited to him, using funds to engage in a fraudulent scheme); *In re Scallen*, 269 N.W.2d 834, 835-37 (Minn. 1978) (suspending an attorney for 5 years for participation in fraud that resulted in misappropriation of over $3 million).

least 5 years.  It is true, as both the Director and respondent note, that respondent has not been charged with criminal fraud or swindle.  Typically, sizable interstate investment frauds centered in Minnesota are investigated by federal authorities (such as the FBI and the IRS) and prosecuted by the United States Attorney.  Nothing in the record of this case tells us whether federal or state authorities have investigated the three fraudulent transactions totaling at least $4.7 million, which were orchestrated out of respondent's office by an entity for which respondent served as officer and attorney.  But the possibility that these three frauds may not yet have appeared on law enforcement's radar screen—and that applicable statutes of limitation may be near expiration—should not save respondent from disbarment.