OPINION
PER CURIAM.
The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent Duane A. Kennedy, alleging that Kennedy committed professional misconduct by stating in a letter that his client, a complainant in a criminal sexual conduct case, would not testify against the defendant in her criminal case if the defendant settled the complainant’s civil claim for $300,000. Following an evidentiary hearing, the referee found that Kennedy .violated Minn. R. Prof. Conduct 8.4(a) and 8.4(d) and recommended a suspension for a minimum of 90 days. We conclude that the referee’s findings and conclusions are not clearly erroneous but that a suspension for a minimum of 30 days is the appropriate discipline for this misconduct.
Kennedy has been licensed to practice in Minnesota since 1975. He is a solo practitioner who handles both criminal defense and personal injury matters. On June 19, 2013, we publicly reprimanded Kennedy and placed him on 2 years of probation for representing both a defendant and a witness in the same matter and failing to inform another client of a settlement offer unless the client paid outstanding attorney fees that were due Kennedy. In re Kennedy, 831 N.W.2d 912, 912 (Minn.2013) (order).
The Director filed the instant petition for disciplinary action while Kennedy was on disciplinary probation. The misconduct alleged in the petition relates to three letters Kennedy sent on behalf of his client, B.W., approximately 1 month after Kennedy was placed on disciplinary probation. Kennedy filed a timely answer to the petition, and we appointed a referee.
Following an evidentiary hearing, the referee issued findings of fact, conclusions, and a recommendation for discipline. The referee made the following findings and conclusions.
In April 2013, S.P. (“the defendant”) was charged with third-degree criminal sexual conduct and misconduct of a public 'employee.[1] The criminal complaint alleged that while the defendant was a juvenile *345 probation officer, she had a sexual relationship with B.W., a person who was on probation in Minnesota. The defendant was not B.W.’s probation officer, but the defendant was aware that B.W. was on probation. The defendant retained C.C. (“defense counsel”) as her criminal defense attorney. B.W. retained Kennedy to pursue a civil claim against the defendant.
On July 12, 2013, Kennedy faxed a letter to defense counsel, introducing himself as B.W.’s attorney. Kennedy stated that he only represented B.W. “for this civil [claim].” Kennedy then wrote: “The only good resolution for [the defendant] is a dismissal, where she has a right to ex-pungement. I demand settlement for $300,000.00. If [the defendant] is interested, I suggest we discuss in person, and move promptly.” Defense counsel did not respond to this letter.
On July 17, 2013, Kennedy faxed a second letter to defense counsel. Kennedy referenced the first letter’s offer and wrote: “It could result in dismissal of the criminal complaint against [the defendant], with a right of expungement. If she is interested, please call and we can meet to discuss.” Defense counsel did not respond to this letter. ■. He did, however, file a complaint with the Director related to the two letters.
On July 29, 2013, before Kennedy was aware that the Director had received defense counsel’s complaint, he faxed a third letter to defense counsel.. Kennedy wrote: “If [B.W.] can settle with [the defendant], he may decide to ask the prosecutor to dismiss, and he may decide to not testify against her. In that event, she would not be convicted and could acquire expungement.” Again, defense counsel did not respond to this letter.
Kennedy testified that at the time he faxed the letters, he and B.W. had agreed to threaten a civil lawsuit against the defendant alleging claims of assault and battery. Kennedy had told B.W. that he would not actually file such a lawsuit against the defendant. According to Kennedy, the “theme” of the letters was “[s]et-tle a civil lawsuit, and I will essentially act more favorably for you as a witness in the criminal case.”
Ultimately, the defendant pleaded guilty to misconduct of a public employee, and the State dismissed the criminal sexual conduct charge. The prosecutor who handled the criminal case testified that she received Kennedy’s letters from defense counsel pursuant to “Rule 9 as a continuing disclosure ... indicating he intended to use them at trial.” The prosecutor testified that the letters “had a chilling effect” on the criminal case and she felt that she could not move forward with the sexual assault charge because B.W.’s credibility had been “completely gutted.”
The referee found that Kennedy’s letters “were intended to convey an offer from [Kennedy] that in exchange for a money payment from [the defendant], [B.W.] would decide not to testify against [the defendant] in the criminal case.” The referee also found that the letters substantially influenced the prosecutor’s decision to offer a plea bargain because they “alerted defense counsel ... that [B.W.] may be an uncooperative witness and may have been willing to barter his testimony in exchange for a price.” The referee however, determined that the letters did not “constitute the primary or compelling reason” for the prosecutor’s decision.[2] *346 Nevertheless, the referee found that “prejudice to the criminal prosecution was intended by” Kennedy “and actually resulted from his letters.”
The referee concluded that respondent violated Minn. R. Prof. Conduct. 8.4(a) and 8.4(d). The referee found aggravating factors based on Kennedy’s commission of the ■current misconduct while on disciplinary probation; Kennedy’s prior discipline; Kennedy’s lack of remorse and insistence that he had done nothing wrong; and Kennedy’s substantial experience in the practice of law. The referee recommended that Kennedy be suspended for a minimum of 90 days and that he be required to petition for reinstatement.
Kennedy challenges the referee’s findings that by sending the three letters to defense counsel, he intended to prejudice the defendant’s criminal prosecution, claiming his only intent was to settle a valid claim B.W. had against the defendant. He further challenges the referee’s conclusions that by attempting to settle B.W.’s civil claim against the defendant, he violated Minn. R. Prof. Conduct 8.4(d) or 8.4(a). Finally, Kennedy argues the referee’s recommended discipline is too severe.
I.
When a party to a disciplinary proceeding orders a transcript, “the referee’s findings and conclusions are not conclusive.” In re Paul, 809 N.W.2d 693, 702 (Minn.2012). However, we give “great deference to the referee’s findings of fact and will not reverse those findings ‘if they have evidentiary support in the record and are not clearly erroneous.’ ” In re Coleman, 793 N.W.2d 296, 303 (Minn.2011) (quoting In re Varriano, 755 N.W.2d 282, 288 (Minn.2008)). We “will review the interpretation of the” Minnesota Rules of Professional Conduct “de novo,” but will “review the application of [those rules] to the facts of the case for clear error.” In re Aitken, 787 N.W.2d 152, 158 (Minn.2010).
II.
We first address Kennedy’s challenges to the referee’s findings and conclusions that by sending the three letters, Kennedy violated Minn. R. Prof. Conduct 8.4(a)[3] and 8.4(d).[4] Kennedy argues that the referee’s findings about the terms of the settlement offer that he made to the defendant are clearly erroneous. The referee found that B.W. “may have been willing to barter his testimony in exchange for a price” and that “in exchange for a money payment from [the defendant], [B.W.] would decide not to testify against [the defendant] in the criminal case.”
Kennedy argues that these findings are not supported by the record because he testified that the offer, was merely that B.W. would ask the prosecutor to dismiss the charges if a settlement could be reached and that he specifically advised B.W. that while he could try to assert his Fifth Amendment privilege against self-incrimination at the defendant’s trial, he would likely be unsuccessful and would be required to testify or face contempt *347 charges. The referee, however, rejected this testimony as not credible. The referee’s findings are not clearly erroneous simply because he chose to reject some of Kennedy’s testimony. In re Voss, 830 N.W.2d 867, 874-75 (Minn.2013) (stating that the court defers to the referee’s findings when they “are based on a credibility determination” and that a referee is free to reject the testimony of an attorney as “not credible”); accord In re Waite, 782 N.W.2d 820, 824 (Minn.2010) (“The referee was free to reject Waite’s testimony as lacking credibility and did.” (citation omitted)).
Kennedy also argues that the referee clearly erred in finding that he intended to prejudice the administration of justice. Rule 8.4(d), however, does not contain an intent requirement. See In re Grigsby, 815 N.W.2d 836, 844 (Minn.2012); Waite, 782 N.W.2d at 824. Whether Kennedy intended to cause prejudice to the administration of justice is not relevant to whether Kennedy violated Rule 8.4(d).[5]
We conclude there is evidence in the record to support the referee’s findings that Kennedy offered to have B.W. not testify against the defendant in the criminal case if he received a payment from the defendant. There are, of course, the three letters Kennedy wrote, the contents of which are not disputed. • The first letter demands a settlement of B.W.’s civil claim for $300,000 and notes that a “dismissal, where she has a right to expungement” is “[t]he only good resolution for [the defendant].” The second letter makes an express connection between a settlement and the dismissal of the defendant’s criminal charges. It states that a settlement “could result in dismissal of the criminal complaint against [the defendant], with a right of expungement.”
Having received no response to either of these letters, Kennedy sent a third letter in which he indicates for the first time what B.W. would do if his civil claim settled. The third letter states that if a settlement is reached, B.W. “may decide to ask the prosecutor to dismiss and he may decide to not testify against [the defendant], In that event, she would not be convicted.... ” It was not clearly erroneous for the referee to conclude that in these letters, B.W. is offering to not testify against the defendant in her criminal ease in exchange for a cash payment as settlement of B.W.’s civil claim.
Kennedy also testified regarding what he meant when he wrote these letters. In his testimony, Kennedy described the offer as “settle [B.W.’s] civil lawsuit,” and B.W. “will essentially act more favorably for you as a witness in the criminal case.” (Emphasis added). Thus, Kennedy implied that if the defendant paid B.W. $300,000, B.W.’s testimony in the criminal case would change and become more favorable to the defendant.[6] By testifying favorably *348 for the defendant, B.W. would not be offering testimony against her at the defendant’s criminal trial.
The justice “system depends on the truthfulness of the testimony of witnesses and false testimony strikes at the very heart of the administration of justice.” In re Salmen, 484 N.W.2d 253, 254 (Minn.1992). We have also held that “[mjaking threats of criminal prosecution in order to coerce payment in a civil matter” constitutes misconduct under Rule 8.4(d). In re Ulanowski, 800 N.W.2d 785, 796 (Minn.2011). Implicit in such a threat is the promise to refrain from taking action that could lead to future criminal charges if a financial payment is received. If it violates Rule 8.4(d) to offer to change one’s conduct with respect to a criminal prosecution that does not yet exist in order to leverage a settlement of a civil claim, it logically follows that offering to change one’s testimony in an ongoing criminal case in order to leverage a settlement of a civil action that does not yet exist is also prejudicial to the administration of justice.
While victims of crime certainly have the right to' pursue and settle civil claims against the alleged' perpetrators of such crime, the integrity of the criminal justice system is called into doubt when attorneys suggest that the testimony a victim will give in a criminal case is malleable and will change to the benefit of the defendant if a cash payment is received from that defendant.[7] See United States v. Tedesco, 635 F.2d 902, 907 (1st Cir.1980) (“An effort to alter the testimony of a witness for corrupt purposes is plainly an endeavor to impede the due administration of justice.”); Fla. Bar v. Machin, 635 So.2d 938, 939-40 (Fla.1994) (holding that, an attorney engaged in conduct prejudicial to the administration of justice when he offered on behalf of his client, a defendant in a murder case, to set up a trust fund for the child of the murder victim if the other victim and the family of the murder victim did not testify at a sentencing hearing); Iowa Sup. Court Atty. Disciplinary Bd. v. Buchanan, 757 N.W.2d 251, 254 (Iowa 2008) (holding that a lawyer engaged in conduct prejudicial to the administration of justice when he offered to settle a civil suit in exchange for his client not cooperating in a criminal investigation related to conduct uncovered during that civil suit).- We agree with the Florida Supreme Court that “the fair and proper administration of justice requires that the rich and the poor receive equal treatment before the court.... [Wjhen ‘justice’ can be bought by the highest bid *349 der, there is no justice.” Machin, 635 So.2d at 940.
In summary, we hold that the referee’s findings and conclusions that Kennedy violated Minn. R. Prof. Conduct 8.4(a) and 8.4(d) are not clearly erroneous.
III.
The referee recommended that Kennedy be suspended from the practice of law for 90 days and that he petition for reinstatement. Kennedy argues that the recommended discipline is too severe. The Director asks us to adopt the referee’s recommendation.
The purpose of disciplinary sanctions for professional misconduct is not to punish the attorney, but rather to protect the public, safeguard the judicial system, and deter future misconduct by the disciplined attorney and other attorneys. In re Rebeau, 787 N.W.2d 168, 173 (Minn.2010). Our court is “the ‘sole arbiter’ of the discipline to be imposed for professional misconduct by Minnesota lawyers.” In re Albrecht, 845 N.W.2d 184, 191 (Minn.2014) (quoting In re Singer, 541 N.W.2d 313, 315 (Minn.1996)). In imposing the appropriate discipline, we consider: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public and (4) the harm to the legal profession. Id. We administer sanctions on a case-by-case basis after considering any aggravating and mitigating circumstances, but we also look to similar cases to ensure consistent discipline. Id.
We look first at the four factors relevant to determining the appropriate discipline. Kennedy’s misconduct was serious; he offered to have his client change his testimony in the defendant’s criminal case so that it would be more favorable to the defendant if the defendant paid him to settle his civil claim against the defendant. We have noted that advising a client to provide false testimony is serious misconduct, even when the client does not actually give false testimony. In re Knutson, 711 N.W.2d 807, 809-10 (Minn.2006) (concluding that an attorney committed “a serious offense” when he advised a client to make false statements to a bankruptcy court in a case in which the attorney never filed a bankruptcy petition on behalf of that client). Thus, simply offering to have a client change his testimony in a criminal case to be more favorable to the defendant as part of a civil settlement, even if the settlement is not accepted or the client does not testify, is a substantial deviation from the conduct we expect of lawyers.
With respect to the cumulative weight of Kennedy’s misconduct, we have differentiated between “a single, isolated incident or a brief lapse in judgment,” In re Rooney, 709 N.W.2d 263, 269 (Minn.2006), and misconduct that “persisted for an extended period of time and spanned multiple matters.” In re Fru, 829 N.W.2d 379, 390 (Minn.2013). Kennedy’s misconduct consisted of three letters sent over the course of a few weeks and involved a single matter. Such misconduct is properly characterized as an isolated incident.
Kennedy’s misconduct harmed the public and the legal profession. Actual harm resulted because the outcome in a criminal case was impacted by Kennedy’s conduct. The improper term in Kennedy’s settlement offer contributed to the prosecutor’s decision to enter into a plea agreement with the defendant on the lesser charge and dismiss the more serious criminal sexual conduct charge. At the same time, we acknowledge this harm was tempered because the referee concluded that Kennedy’s letters did not “gut” the criminal case and that the letters did not constitute the “primary or compelling reason” that led to the prosecutor’s decision to agree to a plea *350 agreement to the lesser charge. And for the reasons we explained earlier, Kennedy’s conduct was harmful to the legal profession because it called into question the integrity of the criminal justice system by suggesting a victim’s testimony in a criminal case would become more favorable if a cash payment was received from the defendant. See In re Aitken, 787 N.W.2d 152, 162 (Minn.2010) (explaining that an attorney’s “conduct has caused prejudice to the administration of justice and has thus harmed both the public and the legal profession”).
We next consider the existence of mitigating and aggravating factors. The referee did not find any mitigating factors, and Kennedy does not challenge that aspect of the referee’s report on appeal.
The referee found several aggravating factors, none of which have been challenged by Kennedy. Kennedy committed the misconduct while he was on disciplinary probation, and his prior discipline included engaging in conduct prejudicial to the administration of justice. In re Selmer, 749 N.W.2d 30, 40 (Minn.2008) (“Disciplinary history and violating the disciplinary rules while on probation are both aggravating factors in attorney discipline cases.”). Kennedy has not acknowledged any wrongdoing or shown any remorse. In re Rebeau, 787 N.W.2d 168, 176 (Minn.2010) (“The lack of remorse also constitutes an aggravating circumstance.”). And Kennedy has substantial experience in the practice of criminal law. Id. (“[Substantial experience as a lawyer may constitute an aggravating factor.”).
Finally, we consider similar cases. Both parties argue, and we agree, that In re Backstrom, 767 N.W.2d 453, 453 (Minn. 2009) (order), involves similar misconduct. In that case, the respondent James Back-strom, the Dakota County Attorney, sent an e-mail “threatening to withdraw support for” the Dakota County Medical Examiner, an appointed official, “unless [she] barred her subordinates from testifying as defense experts in criminal cases.” Id. At the time Backstrom made this statement, he was aware that a mother who was being prosecuted in another county for killing her newborn baby had retained a forensic pathologist who was also an assistant Dakota Codnty medical examiner as an expert. As a result of Backstrom’s e-mail, the assistant medical examiner stopped working for the mother in the murder case.[8] We publicly reprimanded Back-strom. Id.
Backstrom is similar to this case because the lawyers in both cases attempted to impact a witness’s testimony in a criminal proceeding. Backstrom threatened to withhold his support for the medical examiner in an attempt to stop her subordinate from testifying for the defense in a criminal case. Similarly, Kennedy told the defendant that B.W. would become a more favorable witness in her criminal case if the defendant paid B.W. $300,000 to settle his civil claims. In both cases, the lawyer’s conduct impacted the criminal case. The prosecutor based her decision to enter into a plea agreement to the lesser charge, in part, on Kennedy’s settlement letters, while in Backstrom, an assistant medical examiner stopped working as a defense expert in a criminal case because of Back-strom’s statements.
There are, however, differences between the cases. There were no aggravating factors in Backstrom, but there are four aggravating factors in this case.
*351 We agree with the referee’s determination that suspension is the appropriate discipline for Kennedy. We disagree, however, with the referee’s recommendation that 90 days is the appropriate length for the suspension. In our judgment, a 30-day suspension is appropriate.
We also disagree with the referee’s recommendation that Kennedy be required to petition for reinstatement. When an attorney is suspended for 90 days or less, reinstatement by petition ordinarily is not required, and the attorney may apply for reinstatement by affidavit. See Rule 18(f), Rules on Lawyers Professional Responsibility (RLPR). The referee, who recommended a 90-day suspension, did not explain why Kennedy should be required to petition for reinstatement. While this recommendation is not without merit, given that Kennedy committed the instant misconduct while on disciplinary probation and has shown a complete lack of insight into his misconduct, we conclude that a reinstatement hearing should not be required because the misconduct involved an isolated incident, and the Director provided no rationale why the court should require a reinstatement hearing.
Accordingly, we order that:
1. Respondent Duane A. Kennedy is suspended from the practice of law, for a minimum of 30 days, effective 14 days after the date of the filing of this opinion.
2. Respondent shall pay to the Director the sum of $900 in costs pursuant to Rule 24, RLPR, and shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).
3. Respondent shall be eligible for reinstatement to the practice of law following the expiration of the suspension period provided that, not less than 15 days before the end of the suspension period, respondent files with the Clerk of Appellate Courts and serves upon the Director an affidavit establishing that he is current in continuing legal education requirements, has complied with Rules 24 and 26, RLPR, and has complied with any other conditions for reinstatement imposed by the court.
4. Within 1 year of the date of the filing of this order, respondent shall file with the Clerk of Appellate Courts and serve upon the Director proof of successful completion of the professional responsibility portion of the state bar examination. Failure to timely file the required documentation shall result in automatic re-suspension, as provided in Rule 18(e)(3), RLPR.
5. Upon reinstatement to the practice of law, respondent shall be on disciplinary probation for 2 years subject to the following terms and conditions:
a. Respondent shall cooperate fully with the Director’s Office in its efforts to monitor compliance with this probation. Respondent shall promptly respond to the Director’s correspondence by its due date. .Respondent shall provide the Director with a current mailing address and shall immediately notify the Director of any change of address. Respondent shall cooperate with the Director’s investigation of any allegations of unprofessional conduct that may come to the Director’s attention. Upon the Director’s request, respondent shall provide authorization for release of information and documentation to verify respondent’s compliance with the terms of this probation;
b. Respondent shall abide by the Minnesota Rules, of Professional Conduct;
c. Respondent shall be supervised by a licensed Minnesota attorney, appointed by the Director to monitor compliance with the terms of this probation. Within *352 2 weeks from the date of filing of this order, respondent shall provide the Director with the names of 4 attorneys who have agreed to[1] be nominated as respondent’s supervisor. If, after diligent effort, respondent is unable to locate a supervisor acceptable to the Director, the Director shall seek to appoint a supervisor. Until a supervisor has signed a cohs'ent to supervise, respondent shall, on the first day of each month, provide the Director with an inventory of client files as described in paragraph d below. Respondent shall make active client files available to the Director upon request; and
d. Respondent shall cooperate fully with the supervisor’s efforts to monitor compliance with this probation. Respondent shall contact the supervisor and schedule a minimum of one in-person meeting per calendar quarter. Respondent shall submit to the supervisor an inventory of all active client files by the first day of each month during the probation. With respect to each active file, the inventory shall disclose the client name, type of representation, date opened, most recent activity, next anticipated action, and anticipated closing date. Respondent’s supervisor shall file written reports with the Director at least quarterly, or at such more frequent intervals as the Director may reasonably request.

. The criminal sexual conduct charge alleged a violation of Minn.Stat. § 609.344, subd. l(m) (2014), which prohibits sexual pen- . etration between an employee of a county correctional system and a person who is under supervision of the correctional system. Consent is not a defense to such a charge. Id.

. The referee based this finding on, among other things, the significant evidence the State had against the defendant, even without the testimony of B.W., including the defendant's admissions to police, and that B.W. was al *346 ways subject to impeachment because of his criminal record.

. Rule 8.4(a) prohibits an attorney from "violating] or attempting] to violate the Rules of Professional Conduct, knowingly assisting] or inducing] another to do so, or do[ing] so through' the acts of another.” All of Kennedy’s arguments related to Rule 8.4(a) are dependent on his arguments about the referee’s findings and conclusions regarding Rule 8.4(d). As a result, we will limit our analysis to the referee’s findings and conclusions regarding Rule 8.4(d).

. Rule 8.4(d) prohibits an attorney from "engaging] in conduct that is prejudicial to the administration of justice.”

. Kennedy's intent is relevant to the discipline that should be imposed for violating Rule 8.4(d). See In re Haugen, 425 N.W.2d 835, 836 (Minn.1988) ("[W]hile respondent's reliance upon the accountant to timely file the tax returns may go toward mitigation of discipline,' it is not a defense to the claimed violation” of Minn. R. Prof. Conduct 8.4(d)). The referee’s finding that Kennedy intended to prejudice the administration of justice is not clearly erroneous. As we have already explained, the referee was free to reject Kennedy’s testimony that he was merely trying to settle a valid civil claim on behalf of his client. And there is evidentiary support for the referee’s finding that Kennedy intended to prejudice the administration of justice by sending the settlement letters, based on Kennedy's testimony about what he was offering to have B.W. do with respect to the defendant’s criminal case as part of the settlement.

. Acknowledging that we have accurately quoted from Kennedy’s testimony, the dissent attempts to diminish this testimony. The dissent claims that we misread the record by *348 pointing to additional statements by Kennedy, and it suggests that a "fair[ ] read[ing]” of Kennedy’s testimony is that he was simply offering to have B.W. give a " ‘more favorable’ victim recommendation to the prosecutor” if the defendant paid B.W. to settle his civil claim against her. The dissent ignores our standard of review in disciplinary cases. We apply a clearly erroneous standard of review to the referee’s findings and defer to a referee's rejection of parts of a lawyer's testimony as not credible. Voss, 830 N.W.2d at 874-75. It is clear the referee rejected as not credible Kennedy’s assertion that he was only offering that B.W. would ask the prosecutor to dismiss the charges if a settlement could be reached.

. Citing a 1991 American Bar Association ethics opinion, the dissent states that “it has never been the law that an attorney commits misconduct when the attorney assists a client in offering ‘to refrain from pressing criminal charges in return for favors in a civil matter.' ” (Quoting ABA Comm, on Ethics & Prof’l Responsibility, Formal Op. 92-363 (1991)). This case, however, does not involve a lawyer who stated his client would not press criminal charges if a civil settlement could be reached. Kennedy committed misconduct because he offered to have his client, B.W., become a more favorable witness in the defendant’s criminal case if the defendant paid B.W. to settle his civil claim.

. Some of these facts are taken from the petition for discipline filed in In re Backstrom. In that case, Backstrom entered into a stipulation for discipline and admitted the allegations in the disciplinary petition. Backstrom, 767 N.W.2d at 453.

. The alleged misconduct consisted of three letters that offered to settle a civil claim. Findings on documentary evidence are arguably not entitled to deference. See Halla Nursery, Inc. v. City of Chanhassen, 781 N.W.2d 880, 884 (Minn.2010) (“The interpretation of a contract is a question of law, and therefore we review de novo the district court's interpretation_”). But I arrive at the same conclusion, whether the referee is given greater or lesser deference.