STATE OF MINNESOTA

IN SUPREME COURT

A14-0995

Original Jurisdiction                                                    Per Curiam

In re Petition for Disciplinary Action against
Mpatanishi Syanaloli Tayari-Garrett, a Minnesota              Filed:  July 1, 2015
Attorney, Registration No. 342075.                        Office of Appellate Courts

_____

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Stephen V. Grigsby, Minneapolis, Minnesota, for respondent attorney.
_____

S Y L L A B U S

The referee's conclusions that the respondent attorney violated the rules of professional conduct by willfully disobeying a court mandate, making false or misleading statements to a tribunal, and committing a criminal act that reflects adversely on her fitness as a lawyer are supported by the record.  Respondent's misconduct is aggravated by her selfish motive, lack of remorse, and failure to acknowledge the wrongful nature of the conduct.  Based upon these violations and aggravating factors, the appropriate discipline is an indefinite suspension from the practice of law with no right to petition for reinstatement for 120 days.

1

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (the Director) filed a petition for disciplinary action against respondent, Mpatanishi Syanaloli Tayari-Garrett, alleging that Tayari-Garrett violated the rules of professional conduct by, among other things, being convicted of willfully disobeying a court mandate and by making multiple false or misleading statements to a court. Following an evidentiary hearing, the referee concluded that Tayari-Garrett violated Minn. R. Prof. Conduct 3.4(c) and 8.4(b)-(d) and recommended that Tayari-Garrett be indefinitely suspended with no right to petition for reinstatement for a minimum of 120 days. We hold that the referee did not clearly err by concluding that Tayari-Garrett violated Minn. R. Prof. Conduct 3.4(c) and 8.4(b)-(d) and that the referee's recommendation for discipline is the appropriate sanction in this case.

Tayari-Garrett was admitted to practice law in Minnesota on November 22, 2004, and currently practices in Texas and Minnesota. Her misconduct occurred during her representation of E.M.M. in a criminal matter. The referee made the following findings and conclusions.

At a January 21, 2011, pretrial conference, the district court established a May 2, 2011, trial date. On April 14, Tayari-Garrett filed a motion to continue the trial date, citing, among other reasons, an undefined personal commitment. Before the hearing on the motion, Tayari-Garrett purchased a nonrefundable plane ticket for travel to Paris from May 4 to May 9 to attend her brother's wedding. The court ultimately denied the motion.

2

Tayari-Garrett failed to appear for the first day of trial, May 2. A lawyer who appeared on her behalf informed the court that Tayari-Garrett called him on May 1, told him that she was in the hospital in Dallas, and asked him to appear and request a continuance. The court continued the proceedings to the following day, May 3, and ordered Tayari-Garrett to provide documentation of her hospitalization; her prognosis, including her ability to travel and conduct trial; and the plans she had made for traveling from Dallas to Minneapolis for trial on May 2. At a hearing the next day, Tayari-Garrett failed to appear and did not produce the ordered documentation. The court again continued the proceedings, to May 5.

Tayari-Garrett later established that she had been admitted to the hospital around 9 a.m. on May 2 and released at approximately 3 p.m. on May 3. Shortly after her release from the hospital, Tayari-Garrett e-mailed the trial judge's law clerk, stating, "Please inform Judge Howard that I have just been released from a hospital and will definitely not be able to attend a scheduling conference this Thursday [May 5]. Too soon." The next morning, May 4, Tayari-Garrett flew from Dallas to Paris via a connecting flight at the Minneapolis-St. Paul International Airport. After the State brought a motion for an order to show cause, the court scheduled a hearing on May 5 and allowed Tayari-Garrett to appear by telephone.

Tayari-Garrett appeared by telephone from Paris for the May 5 hearing. She discussed her medical situation and prognosis, but made no mention of having traveled to France. During the hearing, the court scheduled a contempt hearing for May 9. In response, Tayari-Garrett stated, "I have a follow-up appointment next week so I cannot,

3

and I believe the Court is aware of that, that I cannot be there on Monday [May 9]."

Tayari-Garrett did not appear for the May 9 hearing either in person or by telephone. In fact, at the time of the May 9 hearing, Tayari-Garrett was en route from Paris to Dallas. By order dated May 25, the court found that probable cause existed to find Tayari-Garrett in constructive contempt of court. The court then referred the matter to prosecutors for further handling. Tayari-Garrett was criminally charged with and eventually convicted of misdemeanor contempt of court, Minn. Stat. § 588.20, subd. 2(4) (2014), for her willful disobedience of a court mandate between April 16, 2011, and May 9, 2011. The court of appeals affirmed Tayari-Garrett's conviction. *State v. Tayari-Garrett*, 841 N.W.2d 644, 656 (Minn. App. 2014), *rev. denied* (Minn. Mar. 26, 2014).

Based on these facts, the Director filed a petition against Tayari-Garrett alleging that she violated the rules of professional conduct by, among other things, willfully disobeying a court mandate, making false or misleading statements to a tribunal, and being convicted of willfully disobeying a court mandate. Following an evidentiary hearing on the petition, the referee found that Tayari-Garrett was criminally convicted for "willful disobedience to [a] court mandate" and that Tayari-Garrett made false or misleading statements in her May 3 e-mail to the court and at the May 5 hearing. Based on these findings, the referee concluded that Tayari-Garrett violated Minn. R. Prof. Conduct 3.4(c) and 8.4(b), (c), and (d).[1] The referee also found several aggravating

---

[1]    The petition for disciplinary action also alleged that Tayari-Garrett violated Minn. R. Prof. Conduct 3.1 and 4.4(a), but the referee did not conclude that Tayari-Garrett
(Footnote continued on next page.)

4

factors, but no mitigating factors. The referee recommended that Tayari-Garrett be indefinitely suspended with no right to petition for reinstatement for a minimum of 120 days.

I.

Tayari-Garrett challenges the referee's conclusions that she violated Minn. R. Prof. Conduct 3.4(c) and 8.4(b), (c), and (d), as well as several of the findings underlying those conclusions. Specifically, Tayari-Garrett challenges the referee's findings that a statement in her May 3 e-mail to the court was false or misleading, and that statements she made during the May 5 hearing were false or misleading.

The Director bears the burden of proving professional misconduct by clear and convincing evidence. *In re Voss*, 830 N.W.2d 867, 874 (Minn. 2013). If either party timely orders a transcript of the hearing, as Tayari-Garrett did here, the referee's finding and conclusions are not conclusive. Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR). Nonetheless, when a party orders a transcript, we give "great deference" to the referee's findings and will uphold those findings if they have evidentiary support in the record and are not clearly erroneous. *Voss*, 830 N.W.2d at 874. We give particular deference to the referee's findings when those findings "rest on disputed testimony or in part on credibility, demeanor, and sincerity." *In re Lyons*, 780 N.W.2d 629, 635 (Minn. 2010). A referee's findings are clearly erroneous only when

(Footnote continued from previous page.)
violated these rules. The Director does not contest the referee's dismissal of those allegations.

5

they leave us "with the definite and firm conviction that a mistake has been made." *Id.* (citation omitted) (internal quotation marks omitted).

Given the evidentiary support in the record for the referee's findings and our deferential standard of review, Tayari-Garrett's challenges to the referee's findings and conclusions fail. First, the referee found, and the record confirms, that Tayari-Garrett was convicted, after a jury trial, of misdemeanor contempt of court, in violation of Minn. Stat. § 588.20, subd. 2(4)—specifically for the "willful disobedience to [a] court mandate between April 16 and May 9, 2011." This conviction constitutes conclusive evidence that Tayari-Garrett willfully disobeyed a court mandate. *See* Rule 19(a), RLPR ("A lawyer's criminal conviction in any American jurisdiction . . . is, in proceedings under these rules, conclusive evidence that the lawyer committed the conduct for which the lawyer was convicted."). Nonetheless, Tayari-Garrett argues that her contempt conviction cannot be used to support any conclusion that she committed professional misconduct because "neither the conviction nor the Director's charges embrace any particular act for which [Tayari-Garrett] must be disciplined."

Tayari-Garrett's argument is without merit. First, Tayari-Garrett cannot relitigate her conviction in this disciplinary proceeding. *See* Rule 19(a), RLPR; *In re Dvorak*, 554 N.W.2d 399, 402 (Minn. 1996) ("[A]ttorneys may not avoid the consequences of criminal conviction by attempting to relitigate the issue of guilt or innocence in subsequent disciplinary proceedings."). Thus, to the extent that Tayari-Garrett seeks to challenge the specificity of the factual basis for her contempt conviction, or to challenge the court of

6

appeals' affirmance of her conviction based on evidence presented at the disciplinary hearing, she is precluded from doing so.

Second, Tayari-Garrett's criminal contempt conviction for willfully disobeying a court mandate from April 16, 2011, to May 9, 2011, is a sufficiently specific basis upon which the referee could find that Tayari-Garrett committed professional misconduct. Rule 8.4(b) of the Minnesota Rules of Professional Conduct prohibits a lawyer from "commit[ing] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." A criminal conviction for willfully disobeying a court mandate clearly has a direct relationship to, and "reflects adversely on," Tayari-Garrett's "fitness as a lawyer." *See, e.g.*, *In re Lundeen*, 811 N.W.2d 602, 606 (Minn. 2012).

The act of willfully disobeying a court mandate also constitutes a violation of Minn. R. Prof. Conduct 3.4(c) and 8.4(d). Rule 3.4(c) provides that "[a] lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Tayari-Garrett contends that because the Director and referee failed to specify the obligation or mandate that Tayari-Garrett knowingly disobeyed, the referee erred by concluding that Tayari-Garrett violated Minn. R. Prof. Conduct 3.4(c). But this is just another attempt to circumvent Rule 19(a), RLPR. As discussed above, Tayari-Garrett's criminal conviction is "conclusive evidence" that she willfully disobeyed a court mandate—which clearly violates Minn. R. Prof. Conduct 3.4(c)'s prohibition against knowingly disobeying an obligation under the rules of a tribunal.

7

Minnesota Rule of Professional Conduct 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." We have applied Rule 8.4(d) to a range of conduct that overlaps with Rule 3.4(c) and involves failure to comply with court orders or rules, including: failure to appear at scheduled court hearings, *In re Pierce*, 706 N.W.2d 749, 754 (Minn. 2005); failure to follow procedural rules, resulting in a delayed hearing, *In re Paul*, 809 N.W.2d 693, 703 (Minn. 2012); failure to comply with deadlines and respond to a court's order to show cause, *In re Mayrand*, 723 N.W.2d 261, 267 (Minn. 2006); and knowingly violating a tribal court's disqualification order, *In re Michael*, 836 N.W.2d 753, 762 (Minn. 2013). In this context, Tayari-Garrett's willful failure to comply with a court mandate, conclusively proven through her conviction, also violates Minn. R. Prof. Conduct 8.4(d).

Tayari-Garrett's conviction for criminal contempt does not, however, constitute conclusive evidence that she engaged in conduct that violates Minn. R. Prof. Conduct 8.4(c). Rule 8.4(c) prohibits an attorney from engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation." Such conduct is not an element of the crime for which Tayari-Garrett was convicted. Thus, the referee's conclusion that Tayari-Garrett violated Rule 8.4(c) must rest on findings other than the contempt conviction. The referee made three relevant findings, each of which Tayari-Garrett challenges.

First, the referee found that Tayari-Garrett made a false or misleading statement when she stated in her May 3 e-mail to the trial judge's law clerk: "Please inform Judge Howard that I have just been released from a hospital and will definitely not be able to attend a scheduling conference this Thursday [May 5]. Too soon." The referee found

8

this statement to be false or misleading because Tayari-Garrett "stated and/or implied that she would be unable to appear for medical reasons" and "neither stated nor implied that she intended to be in Paris, France, on that date." Second, the referee found that Tayari-Garrett made a false or misleading statement at the May 5 hearing when she told the court, "I have a follow-up appointment next week so I cannot, and I believe the Court is aware of that, that I cannot be there on Monday [May 9]." The referee found this statement to be false or misleading because Tayari-Garrett "was scheduled on [May 9] to be traveling from Paris to the United States." Third, the referee found, more broadly, that Tayari-Garrett's statements during the May 5 hearing were false or misleading because "[a]t no time during the hearing on May 5 did [she] mention that she had flown to France"; "[i]nstead, [Tayari-Garrett] discussed her medical situation and prognosis."

Our review of the record shows that all three findings have evidentiary support. Moreover, to the extent that Tayari-Garrett's testimony at the disciplinary hearing provided explanations for her statements that conflict with the referee's findings, the referee was free to—and did—find Tayari-Garrett not credible. *See Lyons*, 780 N.W.2d at 635 (stating we especially defer to the referee's findings when they "rest on disputed testimony or in part on credibility, demeanor, and sincerity"). Thus, the referee did not clearly err in finding that Tayari-Garrett made multiple false or misleading statements

and concluding that she engaged in conduct "involving dishonesty, fraud, deceit, or misrepresentation," in violation of Minn. R. Prof. Conduct 8.4(c).[2]

## II.

The Director recommends that we adopt the referee's recommended sanction and indefinitely suspend Tayari-Garrett from the practice of law for a minimum of 120 days. Tayari-Garrett argues that her conduct does not warrant professional discipline, or, in the alternative, warrants a lesser sanction than a 120-day suspension.

"[W]e place great weight on the referee's recommended discipline," but "we retain ultimate responsibility for determining the appropriate sanction." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010). The purposes of attorney discipline are the protection of the public and the judicial system, and the deterrence of future misconduct by the disciplined attorney and other attorneys. *In re Oberhauser*, 679 N.W.2d 153, 159 (Minn. 2004). We consider four factors in determining the appropriate disciplinary sanctions:

---

[2]     Tayari-Garrett argues that even if the referee's findings that she made false or misleading statements to the court are accepted as true, she did not violate Rule 8.4(c) because any false or misleading statements were not made with an intent to deceive. We disagree. As an initial matter, it is not clear that "intent to deceive" is in fact an element of Rule 8.4(c). *See In re Grigsby*, 764 N.W.2d 54, 61 (Minn. 2009) ("Nor is Rule 8.4(c) limited, by its terms, to intentional misrepresentations . . . ."). But even assuming it is an element, in *In re Czarnik* we explained that in the context of Rule 8.4(c), "intent to deceive" means nothing beyond that the attorney "made false statements with knowledge of their falsity." 759 N.W.2d 217, 223 (Minn. 2009). Here, the referee's relevant findings are premised on Tayari-Garrett's awareness that she only gave medical reasons for her inability to appear in person on May 5 and May 9, when in fact she knew that she was unable to appear on those dates because she would be in France or would be travelling on those dates. Therefore, Tayari-Garrett either made these statements with knowledge of their falsity or with knowledge that she had omitted material information from her responses in a misleading way.

"1) the nature of the misconduct, 2) the cumulative weight of the violations of the rules of professional conduct, 3) the harm to the public, and 4) the harm to the legal profession." *Id.* (citation omitted) (internal quotation marks omitted). We also consider mitigating or aggravating factors. *See In re Mayne*, 783 N.W.2d 153, 162 (Minn. 2010).

We first consider the nature of Tayari-Garrett's misconduct. Her conviction for "willful disobedience to [a] court mandate" itself constitutes serious misconduct because her criminal conduct was directly related to the practice of law. *See In re Brost*, 850 N.W.2d 699, 703 (Minn. 2014) (explaining that an attorney's criminal acts are more serious when the criminal conduct occurs within the practice of law). Moreover, this case involves Tayari-Garrett's false or misleading statements to the district court, which also warrant severe discipline. *In re Lochow*, 469 N.W.2d 91, 99 (Minn. 1991) ("[W]hen a lawyer demonstrates a lack of that truthfulness and candor that the courts have a right to expect of their officers to the end that the system of justice will not be undermined, courts do not hesitate to impose severe discipline." (citation omitted) (internal quotation marks omitted)).

We next consider the cumulative weight of Tayari-Garrett's misconduct. "[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004). Tayari-Garrett's misconduct involves multiple disciplinary rule violations, Minn. R. Prof. Conduct 3.4(c) and 8.4(b)-(d), which weighs in favor of more serious discipline. At the same time, her multiple rule violations all arise out of a single matter and occurred over a relatively short

11

period of time. When considering the cumulative weight of disciplinary rule violations, we distinguish between "single, isolated incident[s]" and "misconduct that includes multiple rule violations and persists over time." *Brost*, 850 N.W.2d at 704 (alteration in original) (internal quotation marks omitted). The misconduct at issue in this case is more akin to an "isolated incident" than to misconduct involving multiple violations over an extended period.

We also assess the harm to the public and the legal profession, "requir[ing] consideration of the number of clients harmed [and] the extent of the clients' injuries." *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011) (alternation in original) (citation omitted) (internal quotation marks omitted). Here, Tayari-Garrett's misconduct harmed her client. Specifically, Tayari-Garrett delayed her client's trial and ultimately forced her client to retain other counsel. Further, her misconduct wasted the time of the witnesses and other people involved in the trial. More broadly, an attorney's "[f]ail[ure] to follow court rules harms public confidence in the legal system," *In re Ulanowski*, 800 N.W.2d 785, 801 (Minn. 2011), as do a lawyer's false and misleading statements to a court.

Additionally, we take into account the presence of aggravating and mitigating factors. Here, the referee determined that there are several aggravating factors and no mitigating factors.[3] The referee found that Tayari-Garrett's misconduct was aggravated

---

[3] The referee also found that Tayari-Garrett had "substantial experience" in the practice of law but did not actually state in his conclusions of law that her experience was an aggravating factor and did not explicitly consider it in his disciplinary recommendation. While we have held that a lawyer's substantial experience in the practice of law may constitute an aggravating factor, because the referee did not consider

(Footnote continued on next page.)

12

by her selfish motive of facilitating a personal trip; that she exhibited no remorse for her misconduct; and that her refusal to acknowledge the wrongful nature of her conduct risks future similar misconduct. Because there is support in the record for these findings, the referee did not clearly err in concluding that these aggravating factors were present.[4] Tayari-Garrett did not ask the referee to find any mitigating factors in her answer to the

---

(Footnote continued from previous page.)
Tayari-Garrett's experience in his recommendation for discipline, we decline to consider it in determining the appropriate discipline in this case. *See In re Nathanson*, 812 N.W.2d 70, 80 n.15 (Minn. 2012).

[4] The referee also found that the intentional nature of Tayari-Garrett's misconduct and the discovery of "additional misrepresentations" were aggravating factors. We have concerns, however, regarding the referee's findings and conclusions that the sanction for Tayari-Garrett's misconduct was aggravated by the intentional nature of her misconduct. As a matter of fairness, we question whether the intentional nature of an attorney's misconduct can be an aggravating factor when the rules of professional conduct at issue require proof of intent. *See In re Taplin*, 837 N.W.2d 306, 313 (Minn. 2013) ("[W]e have also cautioned the Director not to 'double count' the same acts of noncooperation as both additional misconduct and an aggravating factor."). Here, Rule 3.4(c) prohibits a lawyer from "knowingly" disobeying an obligation under the rules of a tribunal.

We are also concerned by the referee's finding that the sanction for Tayari-Garrett's misconduct was aggravated by the discovery of "additional misrepresentations" during the disciplinary hearing—namely that Tayari-Garrett told substitute counsel and a paralegal assisting her that she was admitted to the hospital on May 1 when she was not admitted until May 2. "[T]his court observes due process in exercising disciplinary jurisdiction." *In re Gherity*, 673 N.W.2d 474, 478 (Minn. 2004) (explaining that to comply with due process, disciplinary charges must "be sufficiently clear and specific and the attorney must be afforded an opportunity to anticipate, prepare and present a defense" at the disciplinary hearing). Such due process protections are weakened if the referee is permitted to consider uncharged violations of the Minnesota Rules of Professional Conduct under the guise of aggravating factors instead of requiring that allegations of additional misconduct be brought in a supplementary petition. However, we need not decide whether the referee clearly erred by finding either of these aggravating factors because their existence does not affect the discipline we impose in this case.

petition or in her proposed findings and brief to the referee. As a result, her claim that the referee clearly erred by declining to find any mitigating factors for her misconduct fails. *See In re Tigue*, 843 N.W.2d 583, 588 (Minn. 2014) ("[A] referee's failure to make a factual finding regarding remorse is clear error only when the respondent's remorse or lack thereof is raised as an issue in the proceedings before the referee.").

Finally, we consider similar cases to ensure that the discipline imposed is consistent with previous sanctions for similar conduct, *Nathanson*, 812 N.W.2d at 80, although we impose discipline based on the facts and circumstances of each case, *In re Redburn*, 746 N.W.2d 330, 334 (Minn. 2008). We have held that willful disobedience of a court order merits substantial discipline, including disbarment. *In re Daly*, 291 Minn. 488, 495, 189 N.W.2d 176, 181 (1971) ("Because it is elementary that our system of justice is founded on the rule of law, a willful disobedience to a single court order may alone justify disbarment."). In practice, we have generally reserved disbarment for attorneys who have repeatedly failed to comply with court orders or have committed additional serious misconduct. *See In re Lundeen*, 811 N.W.2d 602, 608 (Minn. 2012) (disbarring attorney who repeatedly failed to comply with court orders, misappropriated client funds, made multiple misrepresentations to tribunals and clients, and repeatedly neglected client matters); *In re Grzybek*, 567 N.W.2d 259, 264-65 (Minn. 1997) (stating that there were "at least three separate grounds upon which [the attorney] could be disbarred," including his "repeated failure to comply with court orders"); *cf. In re Hawkins*, 834 N.W.2d 663, 669-70 (Minn. 2013) (determining that disbarment was

appropriate reciprocal discipline for an attorney who, among other things, repeatedly and willfully defied court orders).

In the context of disobedience to a court mandate that is, as here, limited to a single matter, suspension is the more appropriate sanction. In *In re Michael*, we imposed a 30-day suspension for an attorney who violated a tribal court order, made a false statement to a court during a contempt hearing, made a frivolous argument, and improperly accused a judge of bias. 836 N.W.2d 753, 759-60, 768 (Minn. 2013). The attorney's conduct was aggravated by her lack of remorse and failure to accept responsibility for her conduct, but was mitigated by her lack of experience. *Id.* at 767. Although Tayari-Garrett's misconduct is similar in type to that of the attorney in *Michael*, Tayari-Garrett's conduct merits a greater sanction because Tayari-Garrett, unlike Michael, was *criminally convicted* for willfully disobeying a court mandate and made *multiple* false statements to a tribunal.

A greater suspension than that imposed in *Michael* is further supported by sanctions we have imposed for attorneys whose primary misconduct was misrepresentations to a tribunal. *See, e.g., In re Grigsby*, 815 N.W.2d 836, 845-47 (Minn. 2012) (imposing a 60-day suspension for an attorney who made a false statement to the court of appeals and practiced law while suspended); *In re Winter*, 770 N.W.2d 463, 470 (Minn. 2009) (imposing a 120-day suspension for an attorney with a prior disciplinary history who made false statements to a tribunal and to another attorney); *In re Van Liew*, 712 N.W.2d 758, 758 (Minn. 2006) (imposing a 90-day suspension for an attorney who made false statements to a tribunal and failed to file opposition to a motion

15

on behalf of a client). The imposition of suspensions for up to 120 days for attorneys who primarily were sanctioned for misrepresentations to a tribunal suggests that the recommended discipline is not disproportionate to Tayari-Garrett's misconduct, particularly when we take into account Tayari-Garrett's criminal conviction of willfully disobeying a court mandate and the presence of multiple aggravating factors.

Therefore, consistent with our previous decisions and the specific circumstances of this case, we conclude that an indefinite suspension with no right to petition for reinstatement for a minimum of 120 days is the appropriate discipline.

Accordingly, we order that:

1.      Respondent Mpatanishi Syanaloli Tayari-Garrett is indefinitely suspended from the practice of law, effective 14 days from the date of the filing of this opinion, and she shall be ineligible to petition for reinstatement for a minimum of 120 days from the effective date of the suspension.

2.      Respondent shall comply with the requirements of Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

3.      If respondent seeks reinstatement, she must comply with the requirements of Rule 18(a)–(d), RLPR. Reinstatement is conditioned on successful completion of the professional responsibility portion of the state bar examination and satisfaction of continuing legal education requirements, pursuant to Rule 18(e), RLPR.

4.      Respondent shall pay $900 in costs pursuant to Rule 24, RLPR.