STATE OF MINNESOTA

IN SUPREME COURT

A21-1649

Original Jurisdiction                                          Per Curiam

In re Petition for Disciplinary Action against          Took no part, Procaccini, J.
Joseph Kaminsky, a Minnesota Attorney,                      Filed:  January 10, 2024
Registration No. 0053351.                                   Office of Appellate Courts

_____

Susan M. Humiston, Director, Caitlin Guilford, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Jessica L. Klander, Kiralyn J. Locke, Bassford Remele, P.A., Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

1.      The referee's conclusions that respondent violated 16 rules of the Minnesota Rules of Professional Conduct were not clearly erroneous.

2.      The appropriate discipline for an attorney whose misconduct includes filing a false affidavit with a court, failing to properly supervise staff, neglecting a client, failing to represent another client competently and diligently, and failing to deposit unearned advanced fees in a trust account without a flat fee agreement is an indefinite suspension with no right to petition for reinstatement for 9 months.

1

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed a petition for revocation of probation and for further disciplinary action against respondent Joseph Kaminsky. The Director alleged that for more than 5 years, Kaminsky violated many rules of professional conduct in three client matters. We appointed a referee, who concluded that Kaminsky violated 16 rules of the Minnesota Rules of Professional Conduct, some of them more than once. These violations include filing a false affidavit with a court, failing to properly supervise staff, neglecting a client, failing to represent another client competently and diligently, and failing to deposit advanced fees in a trust account without a flat fee agreement. Several of these violations occurred while Kaminsky was on disciplinary probation. The referee recommended that Kaminsky be suspended indefinitely, with no right to petition for reinstatement for a minimum of 9 months.

Kaminsky ordered a transcript and challenged three of the referee's conclusions and the recommended discipline. The Director agrees with the referee's conclusions and recommended discipline. We conclude that the referee did not err in her conclusions and that, given the unique facts of this case, the appropriate discipline is an indefinite suspension with no right to petition for reinstatement for 9 months.

**FACTS**

The following facts are based on the referee's findings of fact. Joseph Kaminsky was admitted to practice law in Minnesota on October 20, 1972. He started his solo practice shortly thereafter and has continued this practice for over 50 years. Kaminsky has

a substantial disciplinary history spanning over 43 years of his practice, including nine admonishments, two private probations, and two suspensions. Notably, he has been previously disciplined for the same type of misconduct underlying several violations in the petition.

The Director's petition arises from Kaminsky's representation of three clients. Kaminsky does not challenge any findings of fact or conclusions related to his representation of G.H.[1] He does challenge the referee's conclusions related to two other matters.

***M.F. Matter***

In July 2018, M.F. retained Kaminsky to amend a previous child custody order. On July 3, 2018, Kaminsky filed a motion requesting that the district court grant M.F., on an *ex parte* basis, temporary physical custody of his children because their mother, P.R., was hospitalized and unable to adequately care for them.

The requested relief was granted on July 9, 2018, and an expedited hearing was set for July 18, 2018. In its July 9, 2018 order, the district court explicitly required personal service on P.R. no later than July 11, 2018, at 12 p.m. Personal service was particularly

---

[1] These uncontested conclusions of the referee include that Kaminsky failed to have a proper flat fee agreement with G.H., failed to deposit G.H.'s funds into a trust account, and failed to properly document receipt of a cash payment from G.H., in violation of Rules 1.1, 1.5(b)(3), 1.15(a), 1.15(c)(5), and 1.15(h) of the Minnesota Rules of Professional Conduct. Before representing G.H., Kaminsky had been previously disciplined for this type of misconduct, and while representing G.H., he was in another disciplinary action involving the same misconduct during his representation of a different client.

important because P.R. might lose sole physical custody of her children and she was possibly in the hospital. Kaminsky testified that he reviewed the July 9, 2018 order.

On July 12, 2018, Kaminsky's staff filed an affidavit of personal service with the district court. The affidavit reflected that P.R. was personally served at an Oak Avenue residence in Annandale, Minnesota. The affidavit was ambiguous as to the date of service stating that service was completed on either July 11 or 12, 2018. The affidavit did not record the time of the service.

Operating under Kaminsky's representation that P.R. had been timely and personally served, the district court held the expedited hearing on July 18, 2018. P.R. did not appear at the hearing. Because P.R. failed to appear, the court granted M.F. temporary physical custody of the parties' children, when P.R. had previously had sole physical custody, and reduced P.R.'s parenting time to just 2 hours of supervised visitation a week.

P.R. did not have her custody rights restored for 2 years. At an October 2020 evidentiary hearing, P.R. testified that she did not learn of the July 18, 2018 hearing until the day before. P.R. argued that procedural errors had occurred in July 2018, including Kaminsky's failure to personally serve her notice of the hearing. The district court issued an order making numerous findings and conclusions regarding the purported service of P.R. Importantly, these findings included that P.R. credibly testified that she was never personally served with the notice because she was then in the hospital and that she had never lived at the Oak Avenue address on the affidavit. Additionally, the district court "was concerned that the affidavit was clearly falsified to get around the notice

4

requirements" and that, as a result, "P.R.'s rights to parent her children were squandered, and that a grave injustice to P.R. had been committed."

At the evidentiary hearing before the referee, several witnesses, including Kaminsky, explained the attempted personal service. A.K., the process server, testified that hours after the district court's service deadline of 12 p.m. on July 11, 2018, had passed, he drove to the Oak Avenue address on the affidavit but could not locate it. He then called Kaminsky who instructed A.K. to call the client, M.F., for more information. A.K. and M.F. met, and M.F. showed A.K. where P.R. lived on Excelsior Avenue. Kaminsky did not investigate P.R.'s residence before attempting service and instead relied on his client for an address without any independent verification.

The person who answered the door at the Excelsior Avenue residence did not accept service. A.K. called Kaminsky to ask if A.K. could leave the papers at the door, and Kaminsky agreed. Kaminsky admitted that leaving documents on a doorstep is not personal service. *See* Minn. R. Civ. P. 4.03 (defining personal service to include delivering a copy to the individual personally or leaving a copy at the individual's place of abode with a person of suitable age). Kaminsky knew that he had instructed A.K. to act in a manner falling short of the court-ordered personal service and inconsistent with applicable rules.

The next day, A.K. went to Kaminsky's office to execute the affidavit of personal service on P.R. T.M., Kaminsky's secretary, prepared the affidavit using the Oak Avenue address Kaminsky had given her. Though Kaminsky was aware that there had been an issue with this address, he did not tell T.M. this fact.

Based on these facts, the referee made the following key findings that formed the basis of her conclusions. Kaminsky failed to ensure that personal service complied with the court's specific deadline. He also failed to review the affidavit before it was filed with the imprecise date, the incorrect address, and false affirmation from A.K. that personal service had been made. Kaminsky's instructions to his staff to file the affidavit demonstrated his willful disregard of its falsity. Though he was aware that personal service never occurred, and that the affidavit was filed, he never asked A.K. to sign a corrected affidavit of service or informed the court of the error. Kaminsky did not investigate the issues related to the address on the affidavit of service until a complaint was sent to the Director. Moreover, even after taking these investigatory steps, he did not correct the false affidavit or clarify the issues with the court. Kaminsky failed to acknowledge that the personal service errors deprived P.R. of her opportunity to be heard and the impact upon the integrity of the legal system. And he minimized the "cataclysmic" harm to P.R. when she lost custody of her children when he explained that, in his opinion, she would not have retained custody of her children under the circumstances of her hospitalization. The referee found this testimony about lack of harm "utterly lacking in credibility."

The referee concluded that by failing to review the affidavit before filing it with the court; by filing a false affidavit with the court to demonstrate timely personal service on P.R.—despite knowing that P.R. had not been personally served; by providing incorrect guidance to A.K. on how to accomplish personal service; and by failing to properly supervise his staff in their efforts to draft, serve, and file the affidavit, Kaminsky had

6

violated Rules 1.1, 3.3(a)(1), 3.4(c), 4.1, 5.3, and 8.4(d) of the Minnesota Rules of Professional Conduct.

### N.P.Y. Matter

Kaminsky began representing N.P.Y. in April 2016.[2] In July 2019, after N.P.Y. requested a refund of the retainer fee, Kaminsky met with N.P.Y. and began to work towards vacating a 50-year harassment restraining order placed against him in 2009. The matter was scheduled for hearing in October 2019, but had to be continued because Kaminsky thought he had to serve the protected party by publication. Then, in December 2019, Kaminsky moved to vacate the harassment restraining order, filed N.P.Y.'s affidavit, and scheduled a hearing for February 2020. He simultaneously filed an affidavit to obtain an order for publication of service upon the protected party. Kaminsky drafted an order for publication, and the court issued the order. Kaminsky then arranged service by publication.

N.P.Y.'s motion was denied, primarily because of improper service. Under the applicable statute, the protected party had to be personally served not less than 30 days before the hearing. *See* Minn. Stat. § 609.748, subd. 5(d) (2022). Instead, Kaminsky

---

[2] The referee made additional, uncontested conclusions about Kaminsky's representation of N.P.Y. The referee concluded that by abandoning N.P.Y.'s client file for more than 3 years and failing to adequately communicate with his client, Kaminsky violated Rules 1.1, 1.3, 1.4(a)(2)–(3), and 1.4(b) of the Minnesota Rules of Professional Conduct. The referee further concluded that, by failing to deposit N.P.Y's advance fee into trust and including contradictory and conflicting language in the after-the-fact fee agreement, Kaminsky violated Rules 1.5(b) and (b)(3) and 1.15(a) and (c)(5) of the Minnesota Rules of Professional Conduct. The referee found that Kaminsky had previously received discipline for fee agreements that were non-compliant or even nonexistent.

attempted service by publication. Given the statute's directive of personal service, the referee found that Kaminsky's erroneous belief that he could effect service by publication showed his failure to adequately research the issue.

When denying N.P.Y.'s motion to vacate, the district court also explained that the motion lacked merit. N.P.Y. had to show that he had complied with the harassment restraining order, that there had been a material change in circumstances, and that he had taken steps to remedy the underlying conduct that led to its issuance. *See id.* The district court found that the record lacked *any* evidence that N.P.Y. had addressed the issues underlying his conduct, namely evidence that N.P.Y. had received mental health treatment or was compliant with medications. The disciplinary record shows that Kaminsky never asked N.P.Y. about his mental health.

The referee concluded that Kaminsky's failure to ask N.P.Y. about his mental health so that it could be factored into the legal strategy to vacate the harassment restraining order violated Rules 1.1 and 1.3 of the Minnesota Rules of Professional Conduct. The referee further concluded that his failure to research appropriate service under the statute violated Rules 1.1 and 8.4(d) of the Minnesota Rules of Professional Conduct.

Based on 174 findings of fact and 11 conclusions of law, the referee recommended that Kaminsky be indefinitely suspended with no right to petition for reinstatement for a minimum of 9 months.

**ANALYSIS**

Kaminsky challenges three of the referee's conclusions of law and the recommended discipline. We first address the challenged conclusions before determining the appropriate discipline.

I.

Because Kaminsky ordered a hearing transcript, the referee's findings of fact and conclusions of law are not binding. Rule 14(e), Rules on Lawyers Professional Responsibility. We nevertheless extend "great deference" to the referee's findings and conclusions. *In re MacDonald*, 906 N.W.2d 238, 243 (Minn. 2018). We will uphold the referee's factual findings if they have evidentiary support and are not clearly erroneous.[3] *In re Stockman*, 896 N.W.2d 851, 856 (Minn. 2017). Factual findings are clearly erroneous if, after viewing the record, this court is "left with the definite and firm conviction that a mistake has been made." *In re Lyons*, 780 N.W.2d 629, 635 (Minn. 2010) (citation omitted) (internal quotation marks omitted). A referee's conclusion of law that a rule of professional conduct has been violated is also reviewed for clear error, but the referee's interpretation of the rules is reviewed de novo. *In re Butler*, 960 N.W.2d 540, 548 (Minn. 2021).

---

[3] In the M.F. matter, Kaminsky disputes findings 76, 78, 81, 87–88, 144–46, 154, 158–59, and 173. In the N.P.Y. matter, Kaminsky disputes findings 109, 160, and 162. Kaminsky also disputes finding 169. Kaminsky does not make substantive arguments for why any of the factual findings are clearly erroneous in his principal brief. By failing to argue the alleged error of these findings, Kaminsky forfeits these challenges. *See In re Igbanugo*, 989 N.W.2d 310, 321 (Minn. 2023) (holding that numerous challenges were forfeited because the attorney did not argue or cite to authority supporting his conclusions).

A.

We begin with the M.F. matter. Kaminsky challenges Conclusion 1—the referee's conclusion of law that he violated six of the Minnesota Rules of Professional Conduct in this matter. Essentially, Kaminsky claims that he did not intend to deceive the district court about service on P.R. He argues that, though A.K.'s attempted service of P.R. was not "good," he believed that P.R. had notice of the custody hearing. Kaminsky further contends that he reasonably believed P.R. had been served and that any misrepresentations made to the court were not made with malice. The Director notes that the referee found that Kaminsky's testimony about not knowing that the service was improper was not credible.

The referee concluded that Kaminsky violated rules prohibiting a lawyer from making knowingly false statements, either to a tribunal or during their representation of a client. *See* Minn. R. Prof. Conduct 3.3(a)(1), 4.1. We give "particular deference to a referee's determination of credibility." *In re Waite*, 782 N.W.2d 820, 824 (Minn. 2010). The referee found that Kaminsky was not credible in some instances during the hearing, particularly related to whether he knew P.R. had been personally served in compliance with the district court's order. The referee specifically cited to Kaminsky's claim that he honestly believed P.R. had been served, which was followed by his admission that, though he had not correctly served P.R., he did not attempt to defraud anyone. Kaminsky also claimed that he did not know in 2018 that personal service was not made and that the service address was incorrect, but the referee explained that the "inescapable conclusion" is that Kaminsky had to have known that information in 2018 after speaking to A.K. on the

10

phone. The referee did not clearly err by rejecting Kaminsky's testimony and concluding that he knowingly made false statements.

We are particularly concerned about the context in which Kaminsky's violation of Rule 5.3 occurred. Rule 5.3 requires a lawyer in a managerial or supervisory capacity to make reasonable efforts to ensure a nonlawyer's conduct complies with the lawyer's professional obligations and holds a lawyer responsible for a nonlawyer's conduct that is ordered by the lawyer. Minn. R. Prof. Conduct 5.3(b)–(c). The referee found that Kaminsky violated this rule by "providing A.K. with incorrect guidance on how to accomplish personal service, and failing to properly supervise his staff in their efforts to draft, serve and file the affidavit."

In every case, proper service is essential. But proper service was especially crucial here, in a family law case involving the custody of children, following an *ex parte* order, and with one parent hospitalized. *See generally* Minn. Gen. R. Prac. 303.04(e) (detailing the obligations on a party seeking emergency relief to ensure that personal service is made unless specific written statements are made about unsuccessful good faith efforts to contact the other party or counsel, or the supporting documents show good cause to excuse rule compliance and the court waives the notice requirement). The district court ordered a clear directive about personal service of P.R. before the expedited hearing could occur, and Kaminsky testified to having reviewed that order. Kaminsky contends that he did not commit misconduct because he likely did not review the affidavit of service before it was filed by his staff. The more fundamental problem, however, is that Kaminsky allowed the affidavit to be filed in the first place. Whatever its contents, Kaminsky knew from his

11

phone call with A.K. and based on his own instructions to leave the paperwork on the doorstep, that personal service had not been completed on P.R. as was represented by filing the affidavit. We hold, therefore, that Conclusion 1 is not clearly erroneous.

B.

We next turn to the N.P.Y. matter. Kaminsky first takes issue with Conclusion 5. In that conclusion of law, the referee determined that he provided incompetent representation, in violation of Minnesota Rule of Professional Conduct 1.1, and lacked diligence, in violation of Minnesota Rule of Professional Conduct 1.3, by not inquiring about N.P.Y.'s mental health during the 4-year representation and failing to factor his mental health into the motion to vacate the harassment restraining order.

Kaminsky argues that the referee mischaracterized the order denying N.P.Y.'s motion to vacate the harassment restraining order. According to Kaminsky, even if he had presented evidence of N.P.Y.'s improved mental health, the motion would have been denied because of the severity of N.P.Y.'s conduct leading to the initial harassment restraining order. Further, Kaminsky claims that not asking N.P.Y. about his mental health was a legal strategy and that, as the lawyer, he could reasonably choose how to accomplish his client's objective. The Director counters that based on the skill and knowledge that Rules 1.1 and 1.3 require a lawyer to have, Kaminsky needed to be aware of and prove material changes to N.P.Y.'s mental health.

We agree with the Director. To vacate the harassment restraining order, the statute requires evidence of a material change in the circumstances that led to the order. Minn. Stat. § 609.748, subd. 5(d). Here, those circumstances were mental health issues. As a

12

result, a reasonably diligent and competent lawyer would investigate facts about the client's mental health and whether any material changes have occurred and present that evidence to a court. The record shows, however, that Kaminsky made no investigation into any material change in N.P.Y.'s mental health; in fact, he does not challenge the referee's finding of fact on this point.

Next, Kaminsky challenges Conclusion 6. In that conclusion of law, the referee determined that Kaminsky provided incompetent representation, in violation of Minnesota Rule of Professional Conduct 1.1, and engaged in conduct prejudicial to the administration of justice, in violation of Minnesota Rule of Professional Conduct 8.4(d), by attempting service by publication when the relevant statute dictated personal service.

Kaminsky maintains that the proficiency required by Rule 1.1 is that of a general practitioner; he asserts that a general practitioner should be able to reasonably rely on a court order authorizing service by publication without threat of disciplinary action. The Director frames the issue as one more fundamental than Kaminsky describes, explaining that Kaminsky violated the rules, not by relying on an erroneous order, but by failing in his legal duty to research whether service by publication was proper.

The Director has the better argument. By not researching the statutorily required means of service in N.P.Y.'s case and then drafting an erroneous proposed order that was later issued by the court, Kaminsky acted incompetently and prejudiced the administration of justice.

Finally, Kaminsky contends that, because the Director does not allege deceit or misrepresentation in this instance, he could not have violated Rules 1.1, 1.3, or 8.4(d). That

13

argument, however, is inconsistent with the plain language of these rules and our caselaw. *See* Minn. R. Prof. Conduct 1.1 ("A lawyer shall provide competent representation to a client."); *see* Minn. R. Prof. Conduct 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client."); *see* Minn. R. Prof. Conduct 8.4(d) ("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice"); *see also In re Kennedy*, 864 N.W.2d 342, 347 (Minn. 2015) (stating that Minn. R. Prof. Conduct 8.4(d) does not have an intent requirement). For these reasons, we hold that Conclusions of Law 5 and 6 are not clearly erroneous.

## II.

We turn now to the appropriate discipline. We give "great weight" to the referee's recommendation, but we are responsible to determine the appropriate sanction. *In re Greenman*, 860 N.W.2d 368, 376 (Minn. 2015) (citation omitted) (internal quotation marks omitted). Ultimately, the goal of discipline is "not to punish the attorney, but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Albrecht*, 779 N.W.2d 530, 540 (Minn. 2010) (citation omitted) (internal quotation marks omitted).

When deciding the appropriate discipline, we examine four factors: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession. *Id.* at 540. We also consider aggravating and mitigating factors. *Id.* And finally, although we consider similar cases, the discipline is tailored to the specific facts of each case. *Id.*

14

Kaminsky did not provide any analysis under this framework. Instead, Kaminsky asks that any discipline be stayed conditioned on his agreement not to accept new clients and to retire within 1 year of our order. He also contends that the referee's recommendation is excessively punitive because he did not intend to deceive or mislead the court in the M.F. matter and because his impending retirement is a mitigating factor. The Director agrees with the referee's recommendation, considering it appropriate to protect the public and to deter similar conduct; she also urges this court to not consider Kaminsky's new decision to retire a mitigating factor.

## A.

First, we consider the nature of Kaminsky's misconduct. Kaminsky's misconduct is serious and includes giving inaccurate instructions to a nonlawyer concerning personal service of an adverse party, filing an affidavit he knew to be false, and failing to subsequently correct the affidavit or notify the court that personal service had not been completed.[4] Dishonesty in statements to a tribunal is particularly serious. *In re Nwaneri*, 896 N.W.2d 518, 525 (Minn. 2017). Kaminsky also abandoned N.P.Y.'s matter for more than 3 years, and when he finally began working on it, he lacked diligence and provided incompetent representation. *See In re Capistrant*, 905 N.W.2d 617, 620–21 (Minn. 2018)

---

[4] In total, concerning Kaminsky's representation of all three clients, the referee found that Kaminsky failed to review and filed a false affidavit, incorrectly supervised staff, neglected a client file, failed to adequately communicate with a client, included impermissible language in a noncompliant fee agreement, provided incompetent representation, failed to timely return client documents, failed to document a cash payment with a countersigned receipt, failed to deposit two clients' advance flat fees into trust absent a compliant fee agreement, and violated the terms of his probation by continuing a pattern of misconduct.

(finding that failing to work on a client matter and to communicate with a client is client neglect and independently warrants discipline).

B.

Next, we consider the cumulative weight of Kaminsky's disciplinary violations. We distinguish "a brief lapse in judgment or a single, isolated incident of misconduct from multiple instances of misconduct occurring over a substantial amount of time." *Greenman*, 860 N.W.2d at 377 (citation omitted) (internal quotation marks omitted). Kaminsky's misconduct was not limited to a "single, isolated incident." Rather, Kaminsky's misconduct affected 3 clients for more than 5 years, leading to more than 25 separate violations of 16 rules of the Minnesota Rules of Professional Conduct.

C.

We next consider the harm Kaminsky caused the public. *Majors*, 973 N.W.2d 621, 629 (Minn. 2022). This factor includes consideration of the number of clients harmed and the extent of that harm. *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011).

Kaminsky directly harmed an adverse party, P.R., and a client, N.P.Y. Kaminsky's misconduct—filing the false affidavit and not providing P.R. notice of the emergency hearing—led the court to hold the hearing and revoke physical custody of her children without notice and an opportunity to be heard. We agree with the referee's finding that the lack of timely notice resulted in a "significant impairment to [P.R.'s] fundamental right to parent her children for over two years," and there is "nothing P.R. can do to have those two years restored." The referee found that Kaminsky harmed not only P.R. but her sons and other members of the immediate family, and that harm "cannot be quantified or reversed."

16

Kaminsky harmed his client, N.P.Y., by neglecting his matter for over 3 years. N.P.Y. was further harmed when Kaminsky began to work on his case but failed to conform his legal strategy to what was required under the statute. Kaminsky's representation of N.P.Y. wasted his client's opportunity to vacate the 50-year harassment restraining order against him. And N.P.Y.'s ability to obtain substitute counsel was impaired by the lost value of his $2,500 advance fee payment from 2016 through 2020, when Kaminsky failed to diligently work on his case.

## D.

Next, we consider whether an attorney's misconduct "reflects poorly on the entire legal profession and erodes the public's confidence in lawyers." *In re Udeani*, 945 N.W.2d 389, 398 (Minn. 2020) (citation omitted) (internal quotation marks omitted). Kaminsky made false statements to a court in his handling of the M.F. matter and was neglectful and incompetent in the N.P.Y. matter. Making false statements to a court harms the legal profession. *In re Sea*, 932 N.W.2d 28, 36 (Minn. 2019). Neglectful and incompetent acts also hurt public confidence in the legal profession. *In re Swanson*, 967 N.W.2d 644, 655 (Minn. 2021). As the referee aptly explained, "the integrity of the judicial system hinges on the reliability of process and lawyers' candor to the court."

## E.

To determine appropriate discipline, we also examine any aggravating and mitigating factors. *In re Quinn*, 946 N.W.2d 583, 592 (Minn. 2020). The referee found that Kaminsky's misconduct involved five aggravating factors and no mitigating factors. We adopt three of the aggravating factors and do not find any mitigating factors.

17

First, the referee correctly found that Kaminsky was on disciplinary probation when he committed some of the misconduct. *See In re McCloud*, 955 N.W.2d 270, 279 (Minn. 2021) (stating that committing misconduct while on probation is an aggravating factor). Kaminsky was on probation beginning on February 13, 2020. While on probation, Kaminsky failed to inform and update the court of the issue of personal service in the M.F. matter and failed to return N.P.Y.'s health records.

Second, the referee found that Kaminsky's disciplinary history is an aggravating factor. Disciplinary history is an aggravating factor because "after being disciplined, an attorney is expected to show a renewed commitment to ethical behavior." *In re Coleman*, 793 N.W.2d at 308 (citation omitted) (internal quotation marks omitted). Kaminsky has been disciplined 14 times since 1979. And we give greater weight to this aggravating factor because Kaminsky's prior discipline includes many of the same violations he committed here. *See In re Moore*, 692 N.W.2d 446, 450 (Minn. 2005) ("We have imposed more severe sanctions when the current misconduct is similar to misconduct for which the attorney has already been disciplined.").

Third, the referee appropriately found that Kaminsky's experience practicing law is an aggravating factor. *See In re Tigue*, 900 N.W.2d 424, 432 (Minn. 2017) (stating that substantial experience practicing law is an aggravating factor). Kaminsky has been practicing law for over 50 years, which is extensive experience in the practice of law. *See In re Ulanowski*, 800 N.W.2d 785, 802 (Minn. 2011) (finding that 6 years after admission and 2 years of full-time practice at the time of an attorney's first act of misconduct was an aggravating factor).

18

Fourth, the referee found that Kaminsky lacked remorse. *See Greenman*, 860 N.W.2d at 378 (stating that failing to exhibit remorse is an aggravating factor). Kaminsky purports to challenge several findings of fact related to his remorse but does not articulate arguments or cite authorities for why the findings are clearly erroneous in his principal briefing before this court. These challenges are forfeited. *See Igbanugo*, 989 N.W.2d at 321. But even had the findings been properly challenged, we need not reach the question of Kaminsky's lack of remorse because the existence of this aggravating factor, when three other aggravating factors are present, would not change the discipline we impose.[5]

Lastly, there are no mitigating factors. Kaminsky argues that his impending retirement is a mitigating factor.[6] He did not argue for this mitigating factor before the referee. A lawyer must ask a referee to find a mitigating factor, however, and cannot raise

---

[5] The referee further found as a fifth aggravating factor that Kaminsky failed to show that he will avoid committing similar misconduct in the future. We have not previously recognized this factor as an aggravating factor. We have only analyzed this factor in cases of attorney discipline when an attorney tries to prove that an adjustment disorder is a mitigating factor. *See, e.g.*, *Albrecht*, 779 N.W.2d at 535 (listing five factors to establish an adjustment disorder, including "that the misconduct is not likely to recur"). Because we conclude that a 9-month suspension is appropriate even in the absence of this aggravating factor, and because the parties did not specifically brief the circumstances under which we should consider this circumstance to be an aggravating factor, we express no opinion on whether failing to show that similar misconduct will be avoided in the future may be an aggravating factor.

[6] We have not previously recognized a lawyer's plan to retire as a mitigating factor, and we express no opinion on whether a plan to retire could be a mitigating factor.

19

the issue for the first time before us. *See In re Tayari-Garrett*, 866 N.W.2d 513, 520 (Minn. 2015); *see also In re Tigue*, 843 N.W.2d 583, 588 (Minn. 2014).

F.

Kaminsky argues that the recommended discipline is punitive, and that any discipline should be stayed because of his impending retirement. Kaminsky cites two cases in which we imposed a stayed suspension. Neither case, however, involves acts of misconduct committed while the lawyer was on probation for similar misconduct, and one of the cases involved reciprocal discipline. *See In re Meyer*, 601 N.W.2d 706, 706–07 (Minn. 1999) (order); *see also In re Leroi*, 869 N.W.2d 671, 672 (Minn. 2014) (order). Although we have occasionally imposed a stayed suspension in a non-reciprocal discipline case, a stayed suspension is not appropriate here.

The Director supports the referee's recommendation of an indefinite suspension with no right to petition for reinstatement for 9 months. The Director cites two cases to show this discipline is consistent with prior cases. *See In re Letourneau*, 792 N.W.2d 444, 447, 453 (Minn. 2011) (imposing indefinite suspension with right to petition for reinstatement after 1 year due to client neglect, failure to communicate, and failure to cooperate with investigation); *see also In re Swanson*, 967 N.W.2d at 654–56 (imposing indefinite suspension with no right to petition for reinstatement for 6 months for misconduct including repeated instances of client neglect and incompetent representation when four aggravating factors applied).

The Director also compares this case with *In re Nelson*, 733 N.W.2d 458 (Minn. 2007). Nelson had been privately disciplined nine times, his misconduct impacted two

20

clients, and, like Kaminsky's misconduct, his misconduct included failing to act diligently, knowingly making false statements (albeit to a client, rather than the tribunal), failing to place client funds in trust, and engaging in conduct that was prejudicial to the administration of justice. *Id.* at 460–63. The referee found multiple aggravating factors and no mitigating factors. *Id.* at 465. Nelson was indefinitely suspended with no right to petition for reinstatement for 6 months. *Id.*

Nelson and Kaminsky's cases are distinguishable; these distinctions, however, support greater discipline for Kaminsky. Kaminsky's misconduct involved more client matters than Nelson's case, and Kaminsky's disciplinary history is more extensive than Nelson's history. Nelson was admonished six times and had three private probations, *id.* at 461; in addition to nine admonitions and two private probations, Kaminsky has been suspended twice. And unlike Nelson, Kaminsky committed some of the misconduct while on disciplinary probation.

Our case law shows that similar misconduct has received variable discipline and the referee's recommendation fits comfortably within that range. *See, e.g.*, *In re Nielsen*, 864 N.W.2d 627, 628 (Minn. 2015) (order) (indefinitely suspending attorney for 4 months for neglecting multiple client matters, failing to communicate with multiple clients, dishonest conduct with clients, and making a false statement to a tribunal; several issues of mitigation were raised and no aggravating factors were referenced); *see, e.g.*, *In re Albrecht*, 779 N.W.2d at 543 (indefinitely suspending attorney for 2 years for neglecting client matter, incompetent representation, advising client to act contrary to order, and conduct prejudicial to administration of justice; multiple aggravating factors, including

21

over ten disciplinary actions, and no mitigating factors); *see generally In re Nwaneri*, 978 N.W.2d 878, 892 (Minn. 2022) (giving "substantial weight" to a referee's recommendation that is "in line with the broad range of discipline we have imposed in prior cases").

In consideration of the unique circumstances of this case, we conclude that the appropriate discipline is a suspension for 9 months.

Accordingly, we order that:

1.      Respondent Joseph Kaminsky is suspended from the practice of law, effective 14 days from the date of this opinion, with no right to petition for reinstatement for 9 months.

2.      Respondent may petition for reinstatement pursuant to Rule 18(a)–(d) of the Rules on Lawyers Professional Responsibility.  Reinstatement is conditioned on successful completion of the written examination required for admission to the practice of law by the State Board of Law Examiners on the subject of professional responsibility, *see* Rule 18(e)(2) of the Rules on Lawyers Professional Responsibility; *see* Rule 4.A.(5) of the Rules for Admission to the Bar (requiring evidence that an applicant has successfully passed the Multistate Professional Responsibility Examination), and satisfaction of continuing legal education requirements, *see* Rule 18(e)(4) of the of the Rules on Lawyers Professional Responsibility.

3.      Respondent shall comply with Rule 26 of the of the Rules on Lawyers Professional Responsibility (requiring notice of suspension to clients, opposing counsel,

and tribunals), and shall pay $900 in costs pursuant to Rule 24 of the Rules on Lawyers Professional Responsibility.

Suspended.


PROCACCINI, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.